## Gusler, et al. v. Hays.

### Same v. Same.

(Decided June 10, 1913.)

### Appeals from Lawrence Circuit Court.

1. Finding of Chancellor.—Some weight will be given the finding of the chancellor on a question of fact, and his finding will not be disturbed on doubtful evidence.

2. Deeds—Deed Made by Mother Pursuant to Agreement With Husband.—A deed made by a mother to two of her children will not be disturbed at the instance of the other children on the ground

of undue influence, when it appears that it was made pursuant to a plan agreed upon between her and her husband years before, although it makes an unequal distribution of her estate, it not appearing how the husband's estate was distributed.

A. O. CARTER, CAIN & THOMPSON and G. W. CASTLE for appellants.

A. J. GARRED, W. D. O'NEAL, JR,. for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Margaret Adams on September 6, 1907, executed two deeds to her sons John Hays and Sterling Hays by which she conveyed to them about seventy-five acres of land which was all the land she owned. The consideration as set out in each deed is the sum of $200 and the obligation of the grantee to pay $30 to each of three of his sisters or the children of such were dead. There were six sisters and each of the grantees was to pay three of them the sum of $30. By each deed it was provided that it should come in full force at the death of Margaret Adams; that is, she retained the use of the land for her life. She died in the spring of the year 1912, and soon after her death these actions were brought by some of her other children and grandchildren to set aside the deeds on the ground that she was not mentally competent to make them, and that they were obtained by undue influence. The issues were made up and a large mass of testimony taken. Upon final hearing the circuit court dismissed the petitions. The plaintiffs appeal.

The appeal raises purely a question of fact. Margaret Adams was seventy years old when she made the deeds. Her first husband was William Hays and from him she received the land in controversy. They had eight children( two boys and six girls. After William Hays' death she married James Adams about twenty-four years before the deeds in question were made. The girls had all married and lived at more or less distance from their mother. The two sons each lived in a quarter of a mile of her and on a part of the original Hays tract which had previously been conveyed to them. According to the evidence for the plaintiffs, Ella Carter, a daughter of the grantor, died in July, 1907. She was very much attached to this daughter, and nursed her very assiduously. After her daughter's death, her mind for some time was unsettled. Previous to this, she had expressed the pur-

pose of dividing her property equally among all the children. In September, 1907, the two sons divided the land between themselves, went to a deputy clerk and had him prepare the deeds and he took them over and they were signed by Margaret Adams and her husband, James Adams. She afterwards declared that she had to sign the deeds; that they were worrying her life out of her. Nothing was paid when the deeds were executed, although the sons afterwards paid or offered to pay the $30 to each of their sisters. The land was worth $2,000 or $3,000 and was practically all the property she had. Such is the plaintiff's proof.

On the other hand the proof for the defendants is in effect this: William Hays, from whom she had received the land, had wished to deed it to the two sons in his lifetime, but she had put him off saying that there was plenty of time for this. After her first husband's death she continued to cherish the purpose of carrying out his wishes in deeding the land to the two sons. It was worth about $1,200 or according to James Adams only $700. She directed the two sons to divide the land between themselves and directed them to have the deeds drawn. After the deeds had been delivered an oil company was taking leases in the neighborhod and one of the sons offered to surrender his deed to his mother so that she could lease the land to the oil company and get the rent, but she declined, saying that she had made the deed and wanted it to stand. James Adams, her husband, was conveying his land to his children and when he asked her to sign the deeds he was making to his children, she said that she would do so, if he would sign the deeds she wished to make for her land; and he agreed to do so. While she could not read or write, she was a woman of good natural sense; the evidence leaves no doubt in our minds that she fully understood what she had done, and that the deeds were executed to carry out the wishes of her first husband from whom she had received the land. The great weight of the evidence shows that she was entirely competent to execute the deeds when they were executed, and that she had long held the purpose of not dividing the estate equally between all the children.

On a question of fact we give some weight to the finding of the chancellor and we do not disturb his finding on doubtful evidence. Except for a short time just after her daughter's death when she talked and acted strangely, nobody seems to have conceived the idea that she was

not of sound mind, and the great majority of the witnesses who lived around her and knew her best testify not only that they never saw or heard anything indicating unsoundness of mind, but that they never heard the question suggested until after her death. She was a good housekeeper, managed her own business and seems to have understood her business transactions. In view of the fact that the deeds were evidently made to carry out the wishes of her first husband, and no doubt to execute a plan agreed upon between him and her, the circuit court did not err in refusing to set them aside. While there is great inequality in what the children get from her, we do not know what they got from their father, William Hays, and it may be that taking his estate and her estate together, the children were more nearly equalized.

Judgment affirmed on both appeals.