## Pittsburgh Filter Manufacturing Company v. Smith.

### (Decided June 22, 1917.)

### Appeal from Franklin Circuit Court.

1. **Contracts—Action for Extra Work—Estoppel—Waiver.—**In an action against a general contractor by a subcontractor to recover for extra work performed by the latter, the defense that the extra work was done without a written order from the general contractor as provided by the contract, cannot prevent a recovery, where it is made to appear that the extra work was necessary; that it was done by the verbal direction of the engineer of the general contractor and under his supervision; and that such extra work was accepted by the general contractor when completed. In such state of case the doctrines of waiver and estoppel both apply to prevent such defense.

2. **Contracts—Action for Extra Work—Evidence—Appeal and Error.** —Where errors on the part of the general contractor's engineer require the performance of extra work by the subcontractor, not contemplated by the contract and for which the contract provides no method of determining the compensation of the subcontractor, it is competent for the latter to prove that it is customary in such cases to allow the subcontractor for such extra work the reasonable cost to him of the material used and labor employed in performing it, and a commission of ten per cent. for his superintendence of the work. A recovery awarded the sub-contractor by the court upon this basis, authorized by the evidence, will not be disturbed on appeal.

3. **Contracts—Subcontractor—Damages.—**Delay on the part of a sub-contractor in completing as a whole, within the time fixed by his contract for its completion, work required of him, will be excusable insofar as such delay was caused by errors on the part of the general contractor's engineer; but for so much of the delay as was caused by weather conditions, temporarily suspending the work, the subcontractor will not be excused, in the absence of a provision in the contract permitting it. Where the general contractor seeks by conterclaim the recovery of damages alleged to have been caused by delay on the part of the subcontrator in completing the work, in the absence of a satisfactory showing that such damages did not wholly result from so much of the delay as was caused by the errors of his engineer, the rejection of the items of the counterclaim for such damages was authorized.

4. **Appeal and Error—Findings.—**It is a well known rule that conclusions of the circuit court on conflicting evidence will not, on appeal, be disturbed, unless found to be against the weight of the evidence.

FURLONG, WOODBURY & WOODBURY and J. P. HOBSON & SON for appellant.

O'REAR & WILLIAMS and BROWN & NUCKOLS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—
Affirming.

The Frankfort Water Company, desiring to build a filter plant at its pump-house on the Lawrenceburg pike near the city of Frankfort, in 1912 employed the appellant, the Pittsburgh Filter Manufacturing Company, to construct the filter plant at the price of $65,-000.00, plus necessary extra work. The appellee, D. D. Smith, contracted with the appellant, Pittsburgh Filter Manufacturing Company, to do all the work of excavation for the foundation and bed of the plant, at the price of $1.00 per cubic yard, to be completed December 1st, 1912. Both of these contracts were reduced to writing.

The site of the Frankfort Water Company's pump and boiler house is on the Frankfort and Lawrenceburg pike at the foot of the tall hill or bluff separating the State Capitol grounds from the pike and the Kentucky River. The filter plant, as completed, extends to within a foot of the line of the pike; its wall at one end adjoins the wall of the boiler house of the water company, and the other end is within ten feet of the large concrete smoke stack of the water company; the rear wall extending its entire length is against and built into the hill. The pump house and residence of the water company's engineer are across the pike and on the bank of the river.

The excavation undertaken by the appellee, D. D. Smith, for the foundation and bed of the plant was in removing from the base and side of the hill the earth and rock to make room for its construction. Though the excavation was originally estimated at seven thousand cubic yards, in the nature of the case the estimate was only an approximate one; the material to be removed consisted, near the surface, of loose and seamy rock and earth, and, toward the bottom of the basins, of solid rock. Appellee did not complete the work until some time in June, 1913. In the view of appellant, at the contract price all the work he did amounted to $8,418.25, of which sum it paid him $7,871.50, leaving as claimed by it, a balance due him on the contract of $546.75. On the other hand, it is appellee's contention that the work done by him amounted, in addition to what was paid him, to $6,726.70, made up of the $546.75 ad-

mitted by appellant to be due him as a balance, plus $1,001.41 for extra work of excavation on the slope of the hill; $2,300.00 for extra work on the upper basin of the filter and, substantially, $2,878.54 for similar work on the lower basin. The parties failing to come to a settlement, appellee sued appellant in the Franklin circuit Court to recover the $6,726.70, and to enforce a mechanic's or materialman's lien on the property of the Frankfort Water Company to the extent of its indebtedness to appellant under its contract with the latter, not exceeding appellee's claim. Appellant, by its answer, admitted the item of $546.75, but controverted all the other items embraced in the $6,726.70 sued for by appellee, and pleaded a counter-claim of $1,369.27 for damages sustained by it on account of appellee's alleged delay in completing the contract, for which amount it asked judgment against him credited by the admitted item of $546.75. On the hearing the circuit court allowed $4,943.53 of appellee's claim, and allowed to appellant $490.00 on its counter-claim, leaving a balance in appellee's favor of $4,453.53, for which and his costs, he was given judgment against appellant; and from that judgment the latter has appealed.

While the judgment allowed appellee for extra excavation on the slope of the hill the entire $1,548.16, claimed by him for that work, as this item includes the $546.75 admitted by appellant's answer, $1,001.41 is all of the item allowed about which there is any controversy on the appeal. The remaining items allowed appellee by the judgment are the sums claimed by him for extra work on the upper and lower basins, aggregating $3,395.37; $2,300.00 of which was allowed for the extras on the upper basin and the remainder for extras on the lower basin. These items, together with so much of the judgment as rejects a part of the counter-claim, are complained of by appellant.

We here insert a diagram showing a cross-section of the work, which, although imperfect, will in some sort serve to show the features of the extra work of excavation done in the slope of the hill.

AB—Perpendicular line above top of upper basin.
BC—Slope which it was assumed the character of the material in the hill
    would require to prevent a sloughing off into the filter.
ABC—Cross section of excavation which it was assumed would be sufficient
    to protect the filter from the fall of the overhanging material.
BD—Slope which was found to be necessary to properly protect the filter.
ABD—Cross section of excavation found to be necessary.
CBD—Cross section of excavation allowed as an extra to appellant by
    Leison.
ABD—Cross section of excavation actually done by appellee, and for all
    of which he was allowed to recover.

The issue as to the extra excavation on the slope will first be disposed of. As previously remarked, the back wall of the filter was built against and into the hill, which sloped at an angle of about twenty-five degrees. While the contract between the water company and appellant did not provide what angle should be given the slope of the hill above the top of the rear wall of the upper basin of the filter, it was obviously intended by the parties, because indispensably necessary, that the excavation should go to the extent of sloping it back far enough to prevent the dirt and rock from sloughing off into the basin of the filter. It was no doubt contemplated by appellant and the water company at the time the original plans for the filter were made that the upper basin would be in, and its back wall supported by, solid rock, which would effectually prevent the sloughing of dirt or loose rock from the hill above into it. But upon beginning the work of construction, it was discovered that while the bottom of both basins, the entire rear wall of the lower one and a part of that of the upper one, would be solid rock, the greater part of the rear wall of the upper basin would be without a solid stone support, hence it became necessary to make such an additional excavation of the slope of the hill as would prevent the dirt and rock that might become loosened above the filter from sloughing into the basin. The necessity for the additional work of excavation done by appellee on the slope of the hill seems, from the evidence, to have been determined by Lieson, the water company's engineer, and Hollingsworth, appellant's engineer, at a meeting attended by them, Myron, appellant's secretary, and appellee, at which time Lieson ordered that the slope be excavated or graded back by appellee to such extent as would prevent the sloughing into the basin. It is true Lieson then assumed that the sloughing could be prevented by excavating far enough to make the slope of the hill conform to an angle represented on the diagram by the lines from "A" to "B," thence to "C." However, the order from Lieson was that the slope be graded back far enough to prevent the sloughing; and according to the testimony of appellant's engineer, Hollingsworth, and that of appellee, uncontradicted by any other evidence we have been able to find in the record, to Hollingsworth's judgment was left the fixing of the angle of the slope, which he did by

requiring that the excavation be made by appellee to the lines on the diagram from "A" to "B," thence to "D." It, therefore, appears from the evidence that the cross-section of excavation found to be necessary and that was actually made by appellee was determined by appellant's engineer, Hollingsworth, with the assent of the water company's engineer, Lieson, and the work of excavation actually performed by Hollingsworth's order. For this work, as already stated, $1,546.16 was allowed appellee by the circuit court, $546.75 of which appellant admits to be due him.

It is admitted by appellant that when Lieson, the water company's engineer, to whom by the terms of the contract all matters with respect to which it and the water company failed to agree, were required to be referred, came to consider the claim of appellant against the water company for the extra work in the excavation in question, he allowed appellant compensation in accordance with a line shown on the map by the letters "C," "B," "D," amounting to $546.75, but refused to pay it for that part of the excavation included in the triangle inclosed by the lines "A," "B," "C;" for which reason it insists that it is not liable to appellee for any greater sum; its contention being that the decision of the matter by Lieson was in the nature of an award by which appellee, as well as appellant, is bound. In other words, appellant insists that appellee is not entitled to compensation at all for that part of the excavation represented by the diagram "A," "B," "C." The clause of the contract between the water company and appellant under which it is claimed the latter's engineer, Lieson, was made the arbiter in disputed matters arising out of the construction of the filter is as follows:

"It is further agreed by the said party of the second part that all estimates of the completed work as furnished by the engineer shall be final and conclusive, and should any discrepancies appear or misunderstandings arise as to the true meaning of the drawings, plans and specifications on any point, the decision of the engineer of the water company shall be final and conclusive."

We do not understand it to be claimed by appellant that the excavation above the upper basin does not contain the number of cubic yards set forth in the estimate reported by appellee or that the latter, if entitled to be

paid at all for the work should not be compensated therefor at the contract price of $1.00 per cubic yard. We are not, however, surprised at the refusal of the water company to pay appellant for the entire excavation represented by the triangle "A," "B," "D," as extra work. Obviously, the water company's engineer, Lieson, rejected this claim as incorrect because so much of that excavation as is included in the triangle "A," "B," "C," was work appellant was required by its contract with the water company to do for the lump sum to be paid it. For this reason the engineer only allowed appellant for that part of the excavation represented by the triangle "A," "B," "D." It is patent, therefore, that the only thing settled by the water company's engineer was the matter between the water company and appellant, with which appellee was not concerned. There was no controversy settled by the engineer in which appellee was involved. No disagreement had then arisen between him and appellant as to his right to be paid for the entire excavation. If a part of the work done by him for appellant was what the latter was required by its contract with the water company to do for the lump sum to be paid it by that company, that fact was known to appellant when it required appellee to do the additional work, for which it was not entitled to any additional compensation at the hands of the water company.

Having such knowledge and compelling of appellee the additional work, appellant will not be heard to say that he shall not be paid for it because it was not entitled to be paid therefor by the water company.

As the alleged decision or award made by Lieson respecting the matters in dispute between appellant and the water company did not result from an arbitration to which appellee was a party, he is not bound by such award. For these reasons, the several authorities cited by appellant's counsel as to the legal effect to be given an award cannot control this case.

It is, however, insisted for appellant that appellee cannot recover for the excavation in question because it involved a change or alteration in the work and of the contract, which could not be made without a written order from it. This contention is based upon the following provision of the contract:

"No alteration shall be made in the work except upon the written order of the general contractor." It is true no order in writing was given by appellant for the additional excavation, but we do not think such a writing was necessary for the reasons: (1) The excavation did not constitute a change in the work or an alteration in the plan upon which the filter was constructed. It was merely extra work, the doing of which was required in addition to the work provided for by the contract, and the necessity for which was not discovered until after the work of constructing the filter had commenced and considerably progressed. (2) The work was verbally ordered by appellant's engineer, Hollingsworth, and commenced under his supervision, and later approved in like manner by its manager, Leopold, by whose order it was completed. We are unable to understand by what process of reasoning appellant can complain of appellee for having made the excavation in the absence of a written order when the latter by its agents, Hollingsworth and Leopold, caused him to proceed with the work without giving him a written order to do so, and accepted the work when completed. The situation thus presented is one in which the doctrine both of waiver and estoppel should be applied against appellant with full force.

It is our conclusion that the item of $1,546.16 for the excavation on the slope of the hill was properly allowed appellee by the circuit court.

The next matter to be determined is as to the extra work done by appellee upon the upper or "raw water" basin of the filter. The controversy here involves no charge for the original excavation made by appellee for the basin. The matter in issue is as to the right of appellee to recover for the extra work required to be performed by him in correcting certain errors committed by appellant's engineer in fixing the bottom grade of this basin, which is approximately 206 feet in length and 35 feet in width. The plans and specifications for the filter required that there should be cut all around the edge of the bottom of the basin a "footer trench" about 4 feet 6 inches in width and 12 inches in depth. The bottom was required to be sloped from the outside edges to the center to make the center 6 inches below the level of the outside edges. Through the length of the center ran another trench one foot and a half wide and two

feet deep, in the bottom of which were several holes
known as "sumps," required to be a foot or more
deeper than the bottom of the trench and about three
feet in length. The bottom of the trench was solid rock.
The grade lines to which this bottom was to be cut were
fixed by appellant's engineer, Hollingsworth, and the
cutting done by appellee in accordance therewith. That
is, he dressed the bottom to the necessary smoothness,
cut the "footer trench" around it, sloped it to the center,
put in the trench through the middle and cut the
"sumps" in the trench; all of which was admittedly done
as required by Hollingsworth. Following the comple-
tion of this work, however, D. E. McDonald, the engi-
neer of the Nicola Building Company, a corporation hav-
ing the sub-contract from appellant to do the concrete
work in the filter, discovered an error in the grade lines
of the bottom of the upper basin; that is, that the lines
as given by Hollingsworth were too high, rendering it
necessary to lower the bottom as much as 8 inches at
the end. Hollingsworth agreed with McDonald that the
error had been made and gave appellee a new grade
line for the bottom, in order to conform to which it be-
came necessary to lower the bottom not exceeding 8
inches at any place. As the bottom of the basin was
what is known as "bastard limestone," a hard, tough
rock, the depth to which it had to be lowered was too
little to admit of blasts of any consequence. Only slight
"pop" shots could be used and when these were fired
the adjacent rock, instead of splitting, would "nest" or
blow out in small depressions, requiring the workmen
to take "points" or short drills and hammers and shape
off the little elevations left by the shots. The "footer
trench" had to be redug, the bottom sloped to the center,
the center trench put in and the "sumps" either redug
or deepened, ending with the redressing of the entire
bottom of the basin. As this work of lowering and re-
dressing the bottom of the upper basin, done by appel-
lee, was, according to the great weight of the evidence,
undoubtedly made necessary by reason of the error of
appellant's engineer, Hollingsworth, the question to be
determined is what ought appellee to recover for this
work. It required more than three weeks to perform
this work, and it is contended by appellant that appellee
is only entitled to recover therefor the reasonable cost
of the work which its evidence conduced to show ought

not to exceed $5.00 per cubic yard. On the other hand, the evidence of appellee conduced to prove that his charge of $20.00 a yard for the work is reasonable and we are not prepared to say that the compensation allowed appellee by the circuit court for the extra work upon the upper basin is not sustained by the weight of the evidence.

It is, however, insisted for appellant that the allowance of any amount to appellee for the work on the upper basin was unauthorized by the pleadings.

In the original petition it was alleged by appellee that the error causing the extra work by him on the upper basin was made by appellant's engineer in charge of the work, without naming him. Appellant moved that appellee be required to give the name of the engineer and the latter by amended petition averred, upon information and belief, that the name of the engineer was McDonald, but that his true name was well known to the appellant. Appellant's answer denied that the error was committed through McDonald, "or any other engineer" in its employ, and denied that McDonald was in charge of the work on the basin as its engineer. This denial was repeated in an amended answer filed by appellant as was also the denial that appellee had been compelled to do the extra work performed by him by reason of an error on the part of any engineer in its service.

The evidence shows that the error in question was committed by appellant's engineer, Hollingsworth, and was admitted by him when the error was discovered by McDonald, which discovery was made while Hollingsworth was in charge of the work. Moreover, that Hollingsworth made the new grade lines for correcting the error which resulted in the extra work later performed by appellee. It also appears from the evidence that McDonald, though in the employ of the Nicola Building Company, was, by reason of the absence at one time of Hollingsworth, placed by appellant in charge of the work on the basin. So, while the error was not committed by McDonald, it was, notwithstanding the denial of appellant's answer to the contrary, committed by another of its engineers, viz., Hollingsworth, who should have been named by its answer as the engineer then in charge. Furthermore, when it was shown by the evi-

dence that Hollingsworth was appellant's engineer in charge and that the error causing the extra work by appellee was committed by Hollingsworth, no claim was then made by appellant of variance between the pleadings and proof. In view of the situation presented the mistake in the pleadings, if not cured by the judgment, was waived by appellant's failure to complain of the alleged variance in the court below and by its introduction of evidence upon the issue as to whether the error resulting in the extra work by appellee on the basin was committed by Hollingsworth or McDonald. Therefore, its complaint of the defect in the pleadings, made for the first time in this court, furnishes no ground for the reversal of the judgment.

In the matter of the extra work done by appellee in the lower basin, we have reached the conclusion that the amount allowed him therefor by the circuit court also appears to be sustained by the weight of the evidence. The errors corrected in the lower basin by appellee were committed by McDonald, who then represented appellant in supervising the work. In giving the grade of this basin he established it three feet higher than it should have been. Hence, after the bottom was leveled off and the "footer trench" dug across the front, it became necessary to lower the bottom three feet through solid rock, and recut the "footer." When this error was discovered there had been some concrete poured in a trench in front of the basin which made it necessary to exercise great care in removing the rock. It appears from the evidence that there were 450 cubic yards of rock removed, and that in addition to lowering the bottom of the basin appellee was required to cut five holes in the bottom to support certain pillars. These holes were four feet square and about three feet in depth. The holes were also cut through the solid rock and were made true to line; no blasting could be used and the work was nearly all hand chiseled.

It is also complained by appellant that the circuit court erred in allowing appellee to recover upon what is known as a "force account" basis and that the proper basis for a recovery in a case like this is a *quantum meruit*. By the term "force account" is meant a charge for the amounts actually expended by the contractor for extra work and material, plus an allowance of ten per cent. to cover superintendence and use of tools. Accord-

ing to the evidence the right of resort to the force account arises by a custom of contractors, in the absence of an agreed price to be paid for the extra work performed. The propriety of applying the force account method in this case seems to have been fairly demonstrated by the weight of the evidence, furnished by the numerous experts, found in the record; and it does not appear from appellant's contract with appellee that it contains any provision fixing his compensation for such extra work as he did on the two basins; nor does appellant claim that the $1.00 per cubic yard, the price fixed by its contract with appellee for all the work of original excavation it required of him, would properly compensate him for the extra work on the basins. It does, however, contend, and the evidence introduced in its behalf conduced to prove, that the charges contained in appellee's account for the extra work on the basins are in the main unreasonable, if not exorbitant. On the other hand, the evidence introduced in appellee's behalf conduced to prove that the charge as to each item of his account was both reasonable and customary.

It should here be stated that the item of appellee's account contained in the charge of $165.47, money paid by him for liability insurance, is conceded by appellant to have been properly allowed by the circuit court, if under his contract with it appellee was entitled to recover at all, as he was required by his contract with appellant to carry such liability insurance. This explanation is deemed necessary because the item upon its face does not appear to be germane to the other charges contained in the account.

Discussion of the items of the account *seriatum* would serve no good purpose and, besides, would stretch the opinion to an unreasonable length. Hence, it is regarded sufficient to say that, notwithstanding the contrariety of evidence as to each of the items sued for by appellee and as to the account as a whole, we are unable to find that the circuit court's decision upon any disputed question arising out of the account is contrary to the weight of the evidence, and it is a well known rule that conclusions of the circuit court on conflicting evidence will not, on appeal, be disturbed unless found to be against the weight of the evidence. Abram v. Mallicoat, 147 Ky. 817; Colyer Bros. v. Neyens, 143 Ky. 797; Gusler v. Hayes, 154 Ky. 306; Goff v. Murphy, 153 Ky.

634; Martin v. Hall, 152 Ky. 677; Burrow v. Hall, 152 Ky. 252.

Another, and the final matter submitted for our decision by the appeal is whether the action of the circuit court in rejecting certain items of damages set up by appellant's counter-claim, was error. The damages were claimed because of the alleged failure of appellee to complete the work required by his contract with appellant within the time therein fixed for its completion; it being provided by the contract that the work was to be completed by December 1st, 1912, and alleged in the counter-claim that it was not, in fact, completed until thirteen months after that date. It, however, appears from the evidence that the work was completed by appellee in the month of June, 1913, about seven months after December 1st, 1912. The damages claimed consisted of $549.17 it was alleged appellant expended in salaries to its employees on the work; $341.10 in necessary expenses in looking after the work; $329.00 for liability insurance it had to continue; $150.00 loss from non-use of its machinery and appliances; $390.00 it paid for an additional sixty-five yards of concrete used in the rear wall of the upper basin; and $100.00 to the Frankfort Water Company for injuries to its property caused by the acts of appellee, making a total of $1,369.27; all which it was, as alleged, compelled to and did pay and lose by reason of the failure of appellee to complete by December 1st, 1912, the work required of it by its contract with appellant.

Appellee's reply specifically denied the items of damages claimed, but admitted the delay in his completion of the work from December 1st, 1912, to June, 1913, and alleged that such delay was, in the main, caused by the omissions and errors of appellant and its agents in conducting its part of the work; and, in part, by weather conditions, all resulting in rendering it impossible for him to complete the work earlier than June, 1913.

Of the above items of damages only the two last mentioned, viz.: That of $390.00 paid by appellant for the additional sixty-five yards concrete for the upper basin and $100.00 paid by it to the Frankfort Water Company for the injury caused the property of that company by appellee, were allowed by the judgment of the circuit court. While a state of case might be presented that

would authorize the recovery of such items of damages as were rejected by the circuit court in this case, no such right of recovery is shown by the record before us, for it cannot be told either from the averments of the counter-claim or from the evidence, whether the delay causing the payment of the sums and expenses constituting these items, resulted from the omissions or mistakes of appellant's engineers, the fault of appellee, or weather conditions. The law controlling this question, as we understand it, is thus stated in 6 Cyc. 66:

"Where a builder is delayed by his employer such additional time as may have been lost by delay shall be allowed; so he should be allowed extra time when required to do extra work, or changes are made in the original plans. Where a cause for delay ceases the obligation to finish is at once imposed upon the builder, and a failure then to perform within a reasonable time warrants damages for unreasonable delay thereafter."

With respect to excuses for non-performance and delays, in 6 Cyc., p. 70, we find the following statement of the law:

"A builder who has improvidently assumed an absosute liability when he might have undertaken a qualified one only, is not excused from performing his engagement, unless prevented by the act of God, the law, or his employer; no hardship, no unforeseen hindrance, no difficulty short of absolute impossibility will excuse him from doing what he has expressly agreed to do. Thus, he is not excused from performance because of a latent defect in the soil; or because the building before completion is destroyed by accidental fire, lightning, wind storm, or flood, unless performance has been delayed unreasonably by the employer."

Again, on p. 71, the same volume, it is said:

"A delay in performance is excused, where it is caused by default of the employer to perform the contract on his part, as where the employer has failed to do or to have done work that is necessary to be done before the builder can proceed with his own work, or has failed to furnish necessary material agreed to be furnished by him, or has ordered the work to be stopped; so delay is excused in the drawings and specifications, or by the acts of the architect, or by alterations in the plans made at the suggestion of the owner, or by the

performance of additional work not contemplated when the original contract was made . . . ."

In Runyon v. Culver, 168 Ky. 45, we held:

"A contract is not invalid, nor is the promisor discharged, merely because it turns out to be difficult, unreasonable, dangerous or burdensome, or even impossible of performance. Where the performance becomes impossible subsequent to the making of the contract, the general rule is that the promisor is not, therefore, discharged. Where the law creates a duty or charge, and the party is disabled to perform it, without any fault in him, then the law will excuse him; but where the party by his own contract creates a duty or charge upon himself, he is bound to make it good notwithstanding an accident by inevitable casualty, because he might have provided against it by his contract."

It is, therefore, clear that appellant cannot recover of appellee damages that may have resulted from delay in the work undertaken by him, if such delay was caused by the mistakes or delinquencies of its engineers; but for the damages resulting to appellant from the delay, appellee would be liable, if the delay was caused by his default, or weather conditions suspending the work. As the $390.00 paid by appellant for the additional concrete and $100.00 paid by it to the water company for the injury to its property inflicted by appellee, were not caused by the delay on the part of the latter in completing the contract, but were caused by his negligence, independently of the delay, the allowance of these two items of damages by the court was authorized by the evidence. As it cannot be definitely ascertained from the evidence what part or how much of the other items of damages claimed by appellant, resulted from the delay in the completion of appellee's work that was caused by his default or weather conditions; or what part, if any, of such damages resulted from the delay in the completion of appellee's work caused by the acts of appellant's engineers, the rejection of these items by the court was authorized. It is, therefore, our conclusion that the findings of the court upon the counter-claim should not be disturbed.

As the record presents no such error as will compel a reversal, the judgment is affirmed. Whole court sitting.