## Clark County Construction Company v. State Highway Commission.

(Decided March 14, 1933.)

CALDWELL & GRAY, BENTON & DAVIS and D. L. HAZEL-RIGG for appellant.

BAILEY P. WOOTTON, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

By chapter 66, Acts of the General Assembly of 1926, the Clark County Construction Company, a corporation, was authorized to institute and prosecute an action in the Franklin circuit court against the state highway commission for the purpose of determining whether the state of Kentucky owes the construction company any further sum on account of the construction or reconstruction of a portion of federal aid project No. 17 in Clark county. Pursuant thereto the construction company did institute such action, but the court sustained a demurrer to its petition as amended and, upon its failure to further plead, the petition was dismissed and it is prosecuting this appeal.

As appears from the record, appellant under competitive bidding was awarded a contract to construct 6.3 miles of federal aid project No. 17 locally known as the Lexington turnpike, beginning in the city limits of Winchester and extending toward the Fayette county line. The commonwealth of Kentucky by and through its commissioner of public roads, Joe S. Boggs, entered into a written contract with appellant. The

contract in substance provided that the work should be done in strict conformity with printed specifications prepared by the state department of public roads and plans therefor which were prepared by the department and which were attached to and by agreement made a part of the contract. As a consideration for the work to be done, appellant was to receive unit prices specified in the contract. Only items specifying crushed stone and Kentucky rock asphalt are involved in this litigation. The price stipulated for these materials was $4.60 per ton for the stone and $1.40 per square yard for the asphalt. In the printed specifications, it is provided that the rock asphalt shall be spread by hand on the base to a depth of 2 inches, carefully raked, lumps broken, and the surface made to conform to grade and cross-sections, and then rolled with a roller weighing five to seven tons.

It is alleged in appellant's petition that section 72 of the printed specifications relating to crushed stone for the base course provided that the size of the crushed stone to be used should be such that it would pass through 3½-inch screens and would be retained by the ¾-inch screens. It is further alleged that the engineer in charge and control of the construction objected to the use of stone of the size specified, and required and ordered appellant in laying the top course, to use stone which would pass through 3½-inch screens, but be retained on a 2-inch screen; that by reason of using the larger stone, larger openings or interstices were left in the surface of the base course which required a greater quantity of asphalt to fill; that it undertook to spread rock asphalt on the surface of the base course to a depth of 2 inches, but the commissioner and his engineer declined to permit it to spread the asphalt by hand to a depth of 2 inches and ordered, directed, and required it to spread asphalt on the stone to a depth of 3 inches; that in order to fill the interstices in the surface and to spread the asphalt to a depth of 3 inches above the surface, it was necessary to spread rock asphalt to a depth of 3½ inches; that the additional 1½ inches of asphalt cost $1.05 per square yard making the total cost of the rock asphalt spread, $2.45 per square yard.

It appears that appellant had been paid $1.40 per square yard for the 63,676 square yards of surface or

$89,147.52 and is now claiming that it is entitled to $1.05 per square yard for additional asphalt furnished or $66,860, and also to interest thereon in the sum of $20,058 to the date of filing its action.

In a second paragraph it is alleged in substance that appellant procured a large quantity of crushed stone conforming with the specifications filed with the contract in order to perform the work in compliance therewith, but that the road commissioner and his engineer refused to permit the stone so procured to be used and directed and required appellant to use the larger size stone as hereinbefore set out, and that because appellant was not allowed to use at least 12,000 tons of crushed stone which it had procured to comply with its contract, same was worthless for any other purpose; that the cost of the stone was $4 per ton and plaintiff was damaged in the sum of $4,800 because of the refusal to permit him to use same.

In an amended petition, it is alleged that the engineer in charge and control of the construction changed and altered the specifications for the work as hereinbefore set out and that such change altered substantially the original specifications and increased the cost of the work; that such changes and alterations were made by the engineer under the directions and order and with the knowledge of the commissioner of public roads, but that the commissioner did not notify appellant in writing of the changes and did not enter into any agreement in writing with appellant relative to the extra amount to be paid for the increased work nor make nor require that such written agreement be entered into; that by reason of his failure to request or require agreement in writing he waived requirement that such written agreement should be entered into.

The specifications filed with and made a part of the contract contain the following provisions:

"Section 17. *Deviation from Plans and Specifications*: No person except the Commissioner of Public Roads shall have authority to revoke, alter, enlarge or change any of the provisions of these specifications or the plans for this work and if the contractor deviates from them in any particular without written authorization from the Commissioner of Public Roads, he does so at his own risk

as payment for such work may not be approved.

"Section 18. *Interpretation of Plans and Specifications*: The meaning and intent of the plans and these specifications, should any question arise relative thereto, will be decided by the Commissioner of Public Roads and his decision shall be accepted by the contractor as final. Dimensions in figures on the plans shall be accepted as the dimensions of the work though the scaled dimensions be at variance therewith. Specifications for special work and any other special specifications attached to the proposal shall be considered as a part of these specifications and shall take precedence over other clauses in the specifications in conflict therewith.

"Section 19. *Alteration of Work*: The Commissioner of Public Roads reserves and shall have the right to make such changes from time to time, in the plans and specifications as may be desirable or necessary to have the work done in the most satisfactory manner and such changes shall in ro wise invalidate the contract, provided that such changes do not alter substantially the original plans and specifications. If any such changes should alter substantially the original plans and specifications and thereby increase or decrease the cost of the work to the contractor, an amount equal to the increased or decreased cost shall be paid to or deducted from the amount otherwise due the contractor as the case may be. The Commissioner will notify the contractor in writing of such changes and an agreement in writing shall be entered into between the (Commissioner of Public Roads) and the contractor (subject to the approval of the Fiscal Court Commissioner) relative to the extra amount to be paid or the amount to be deducted.

"Section 20. *Extra Work*: The contractor shall do such extra work as may be deemed necessary and ordered, in writing, by the Commissioner of Public Roads, to complete fully the work contemplated. He shall furnish the Commissioner original bills for materials and labor cost sheets and such other data as may be necessary for him to determine the cost of materials and labor used in doing the extra work. No payment will be ap-

proved for extra work unless it was ordered, in writing, by the Commissioner.

"Section 21. *Unauthorized Work*: Work done without lines and grades being given, work done beyond the lines and grades shown on the plans or as given, except as herein provided, or any extra work done without written authority may be considered as unauthorized and at the expense of the contractor and may not be measured or paid for. Work so done may be ordered removed and replaced at the contractor's expense."

It is argued by counsel for appellant that the lower court erred in sustaining the demurrer to the petition because the commissioner had power to make the contract and to order or direct alterations and changes in the plans and specifications and also because he had power and authority to and did waive the provisions of the contract made by him that orders for changes and alterations in the work should be in writing.

At the outset it may be said that general principles of the law of contracts govern public as well as private contracts, however, there is a well recognized distinction between such contracts as respects the power and authority of the contracting parties. We find there is a great contrariety and confusion of opinion respecting some phases of the question presented, however, there is practical agreement of authority that any one who deals or contracts with public officials or with public bodies must at his own peril take notice of their authority since they can only act within the limits of express or necessarily implied powers conferred upon them by law.

Most, if not all jurisdictions, give recognition to the general rule that where a statute directs the manner of making public contracts and specifically prescribes the method of the exercise of the powers of public bodies or officials with respect thereto, such statute is the measure of their authority and any acts beyond the clearly defined limits fixed by the Legislature are void; and where it is required by statute that such contract shall be in writing and the contract itself provides that any modification of its terms shall

be in writing, such provisions are mandatory and oral changes and alterations are ineffectual and void.

These rules are set forth and fully discussed in Donnelly on the Law of Public Contracts, with numerous authorities cited as sustaining them, however, an examination of that work will reveal that the contention made by counsel for appellant is not without respectable support of authority.

With these rules in mind, we come to a consideration of statutes conferring upon the commissioner of public roads the authority to contract and the method prescribed for the exercise of the powers granted. By section 8, chapter 23, Acts of 1918, which was in effect at the time this contract was made, the General Assembly of Kentucky assented to the provisions of an Act of Congress approved July, 11, 1916 (39 Stats. 355), entitled, "An Act To provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," and gave to the commissioner of public roads, authority to enter into contracts and agreements with the United States government relating to the survey, construction, and maintenance of roads under the provision of the act assented to and to do all other things necessary to fully carry out the co-operation contemplated thereby. The commissioner of public roads was further authorized and directed to prepare necessary plans and specifications and to enter into contracts for the construction of federal aid projects in accordance with the rules and regulations of the Secretary of Agriculture of the United States.

Among other things it was provided by the act of Congress that "any State desiring to avail itself of the benefits of this Act shall, by its State highway department, submit to the Secretary of Agriculture project statements setting forth proposed construction of any rural post road or roads therein. * * * If the Secretary of Agriculture approve the plans, specifications, and estimates, he shall notify the State highway department and immediately certify the fact to the Secretary of the Treasury. * * * No payment of any money apportioned under this Act shall be made on any project until such statement of the project, and the plans, specifications, and estimates therefor, shall have been sub·

mitted to and approved by the Secretary of Agriculture." Section 6.

Under this act of Congress, the federal government would pay not to exceed 50 per cent. of the cost of the construction of the project agreed upon, the state to bear the remaining cost, but under the act then in force, counties were authorized to contribute and the state to accept contributions to aid in the construction of federal aid projects.

The petition alleges that this was a federal aid project and it is to be presumed that there was a strict compliance with both the state and federal statutes in making the contract and that the plans and specifications and all other parts of the contract were sanctioned and approved by the duly constituted federal authorities.

Appellant in dealing with the commissioner of public roads was not only charged with knowledge of the law and of any and all limitations placed upon his power to make or to modify the contract, but the quoted provisions of the contract itself brought notice to it that all modifications, alterations, and changes should be in writing. These provisions are in language so simple, clear, and explicit that even a layman by cursory examination would be able to fully understand and appreciate the consequences of a disregard or violation thereof.

The foregoing rules to which we shall adhere are neither harsh nor inequitable since any one dealing with public officials or public bodies may avoid their consequences by strict compliance with them. They are grounded in a sound public policy and their abrogation would invite fraud, collusion, and unwarranted expenditure of public funds.

Much of what we have said with reference to the authority of the commissioner of public roads to make or to modify contracts applies with equal force to his authority to waive provisions therein.

The case of Case Threshing Machine Co. v. Commonwealth, 177 Ky. 454, 197 S. W. 940, relied on by appellant grew out of the purchase of a road roller purchased by a committee appointed by the fiscal court. It was, in effect, held that the court could not delegate

this authority, but since it could have contracted to purchase the roller in the first instance, it could have ratified the void contract by appropriate orders. It was further held that, in the absence of such order, the court did not waive the invalidity of the contract because the machinery was accepted by the road engineer of the county and used for a short time in the construction, maintenance, or repair of roads of the county.

In the case of Pike County v. Waugh, 222 Ky. 598, 1 S. W. (2d) 1066, which is relied on by counsel for both parties, there is nothing contrary to the generally recognized rule to which we have referred, but, on the other hand, it is held that the county is not estopped to deny lack of authority upon the part of the county road engineer to make changes and alterations in a contract for the construction of a road because no objection was made to the work as it progressed and the county received the benefit of the work.

The case of Pittsburgh Filter Co. v. Smith, 176 Ky. 554, 196 S. W. 150, is not in point here, since that was a private contract and no public interest or expenditure of public funds was involved.

While we are inclined to the opinion that the commissioner in this instance was without authority to waive the provisions of the contract that any changes or modifications that would increase or decrease the cost of the work should be ordered in writing, the Waugh and Case Threshing Machine Co. Cases, supra, would indicate that, even though clothed with such authority, his alleged acts were not sufficient to constitute such waiver.

The judgment of the lower court might be sustained on other grounds, but the conclusions reached renders it unnecessary to extend the opinion in a discussion of them.

Judgment affirmed.