## Dade Park Jockey Club v. Commonwealth by Auditor of Public Accounts.

(Decided Dec. 15, 1933.)

(As Modified on Denial of Rehearing March 20, 1934.)

E. B. ANDERSON and W. C. MASON for appellant.

BAILEY P. WOOTTON, Attorney General, HARRY D. KREMER and J. W. CAMMACK for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

On May 6, 1927, in consolidated actions pending in the Franklin circuit court styled Commonwealth of Ken-

tucky by Milton Board, Revenue Agent, v. Dade Park Jockey Club, a corporation, in which it was sought to recover license tax due the commonwealth for the years 1925 and 1926, judgment was rendered in favor of plaintiff for $93,000 and the costs of the action. Of this sum $77,500 was for taxes due for the years in question, and the remaining $15,500 covered the 20 per cent. penalty provided by statute for the use and benefit of the reve nue agent in such cases. The judgment provided that it should bear no interest, and that execution should issue only upon order of the attorney for plaintiff. While it is not made to appear in the judgment why the provision that it should not bear interest was inserted, it is stated in briefs by counsel for respective parties that this was done at the behest of and in conformity with an agreement between the parties. The judgment is credited by a payment in the sum of $29,000 as of date of its entry.

On July 31, at the direction of plaintiff, the clerk of the Franklin circuit court issued an execution on the judgment for $93,000, subject to a credit of $29,000 as above indicated, with interest thereon from July 31, 1931, and for the further sum of $24.50, which plaintiff recovered as costs. This execution was placed in the hands of the sheriff, and on August 1, 1931, he made a return, "no property found."

Thereafter, this action was instituted in the name of the commonwealth by the auditor of public accounts against the Dade Park Jockey Club, under and by virtue of section 4169, Kentucky Statutes, and section 439 of the Civil Code of Practice, and, after setting up the foregoing facts, the petition prayed for a general order of attachment and that the Owensboro Bank & Trust Company be summoned as garnishee and for discovery, etc. Under a general order of attachment directed to the sheriff of Henderson county for the sum of $64,-024.50, with interest from May 6, 1927, and for $35, the probable costs of the action, he levied upon $75,100.77 in currency, which was found at the park of the Dade Park Jockey Club in a place known as the "money room." The defendant, however, executed a forthcoming bond in accordance with the provisions of section 214 of the Civil Code of Practice, and retained possession of the funds. After a general demurrer to the petition had been overruled, defendant entered motions to quash both the execution and attachment, which motions

were overruled. It also entered motion to discharge the attachment as to all funds in excess of $64,024.50 and $35 probable costs. Upon a hearing of this motion, $10,541.27 levied upon by the sheriff was discharged and released from the attachment, and, to the refusal of the court to release and discharge from the attachment the sum of $11,041.27, the defendant excepted. It appears in brief that, in disposing of this motion, the court retained $500 in addition to the $35 specified in the attachment as the probable costs of the action.

By answer, as amended, it is alleged in substance that at its race meeting held in August and September, 1931, and prior to the levying of the attachment, 91 races had been run and finished for purses aggregating $74,900, which sums had been allotted by it to the various owners of the winning horses in accordance with the terms and conditions of each race, and, that at the time of the levying of the attachment, it had in its hands $54,222.37, included in the funds levied upon, and which under section 3990a-1, Kentucky Statutes, it held in trust for the use and benefit of the owners of the winning horses. The various owners and the respective amounts due them are fully set out in the answer; that $9,112.89 of the fund levied upon under the attachment was money belonging to holders of pari mutuel tickets on winning horses who had not presented their tickets for redemption and payment; that the funds levied upon which had been allotted to pay the owners of the winning horses had been contributed for that purpose by James C. Ellis; that, because of the way and manner in which it held such funds, it had no right or title thereto nor any pecuniary interest therein.

In a second paragraph the answer set up an agreement entered into between it and the revenue agent whereby it alleged that it was agreed that, in consideration of the payment of $29,000 at the time the judgment was entered, the balance would be paid out of the proceeds arising out of the operation of its racing plant and not otherwise. The answer also made a disclosure of the assets and liabilities of the corporation.

A general demurrer to the second paragraph of the answer was sustained, and plaintiff filed a reply consisting of eight paragraphs, all of which, upon motion of defendant, were stricken except the first and second, which traversed the allegations of the answer. Defend-

ant offered and tendered, but was not permitted to file, an amended answer which it made a counterclaim against Milton Board, and alleged that he was interested in the judgment, and was therefore a necessary party. It will be unnecessary to refer to any of the evidence heard upon the trial of the action except in connection with and in so far as it relates to grounds urged for reversal.

The chancellor handed down a written opinion and his finding of law and of facts, and entered judgment sustaining the attachment and directing that defendant or its sureties be required to pay to plaintiff or to the clerk of the Franklin circuit court the sum of $64,559.50 within 10 days from the date of entry of the judgment, with interest at the rate of 10 per cent. per annum from that date, and defendant is appealing.

We shall consider the various grounds urged for reversal in the order of their treatment in brief for appellant, except where two or more grounds may be appropriately discussed together. It is first urged that the demurrer to the petition should have been sustained because it did not allege that the execution was directed to the county in which the judgment was rendered as provided in section 439 of the Civil Code of Practice. The pertinent part of the petition reads:

"* * * The clerk of the said court issued a writ of fieri facias directed to the sheriff of Franklin county, in which said judgment had been duly rendered. * * *"

While the quoted provision of the petition may be inaptly worded, it is sufficiently specific to disclose that the judgment was rendered in Franklin county and is susceptible of no other reasonable construction.

It is next argued that the motions to quash the execution and attachment should have been sustained because the former did not follow the judgment and the latter was levied upon a sum greatly in excess of the amount of plaintiff's claim. There are some very early cases which seemingly support appellant's theory; however, the rule has been relaxed, and in the case of Lee v. Smyser, 96 Ky. 369, 29 S. W. 27, 16 Ky. Law Rep. 497, which is in harmony with the modern trend of authorities, it was held that an attachment was not void because it was for a greater amount than was shown to

be. due plaintiff; and there is no reason why this should not apply alike to executions. In this instance the clerk included in the execution interest on the principal sum of judgment from the date the execution issued. Manifestly, appellant was not prejudiced by this error of the clerk, if in fact it was error, since no property was taken under the execution, and, when the court's attention was directed to the fact that the fund levied upon under the attachment was in excess of the amount of appellee's claim, the attachment was to such excess discharged and the fund to that extent released. Applying the authorities to the facts and circumstances disclosed by the record, it is manifest that the court did not err in overruling the motions to quash.

Argument that the court erred in sustaining the demurrer to the second paragraph of appellant's answer is untenable. Persons dealing with public bodies or public officials must take notice of their authority to act, since they can only act within the limits of the authority expressly or by necessary implication conferred upon them by law. Clark County Construction Co. v. State Highway Commission, 248 Ky. 158, 58 S. W. (2d) 388. The statute creating the office or position of revenue agent and prescribing his duties and powers neither expressly nor impliedly confers upon a revenue agent the power to bind the commonwealth by such a contract, and his attempt to do so in this instance was wholly ineffectual, since it went far beyond the limits of the express or implied power conferred upon the agent by statute.

It is equally apparent that the court properly refused to permit the answer making the revenue agent a party to be filed. Neither section 4169 of the statute nor section 439 of the Civil Code of Practice indicate that the revenue agent was or is a necessary party to the proceeding. The judgment sought to be satisfied was in favor of the commonwealth of Kentucky, and the fact that the revenue agent had an interest contingent upon the recovery and payment of the fund into the treasury did not make him either a necessary or proper party. No relationship of debtor and creditor existed between appellant and the revenue agent.

The principal ground relied on for reversal by counsel for appellant is that the fund levied upon under the attachment, and especially the $65,000 contributed

by James C. Ellis to the corporation, is exempt from attachment under the provisions of section 3990a-1, Kentucky Statutes. The portion of the act invoked as a basis for this argument reads:

"At such meetings the corporation or the owners of the horses engaged in such races, or others who are not participants in the racing, may contribute purses, prizes, premiums or stakes to be contested for; but no person or persons other than the owner or owners of a horse or horses contesting in a race shall have any pecuniary interest in a purse, prize, premium or stake contested for in such race, or be entitled to, or receive any portion thereof after such race shall have been finished; and the whole of such purse, prize, premium or stake shall be allotted in accordance with the terms and conditions of such race."

In a well written and considered opinion, the chancellor so effectually and properly disposes of this contention that we cannot refrain from adopting that part of his opinion as the opinion of this court. After citing the quoted provision of the statute, the chancellor's opinion says:

"The defendant contends that under this statute funds provided by the corporation or contributed by others as purse money are in the nature of trust funds for the benefit of the winners of races, and that by the express terms of the statute such funds may not be subjected to the claims of creditors of the corporation by attachment or otherwise, but, when each race is finished and the winner ascertained, his right immediately attaches to such funds to the exclusion of all other persons.

"On behalf of the commonwealth it is contended that such was not the purpose or intent of this statute; but that the sole purpose of the Legislature in enacting this law was to insure, in so far as possible, that racing contests held under this act might be free from the baleful influence of dishonest manipulation which might be the result of splitting of purses between the owners of horses winning races and others who might be in a position to 'fix' the race or improperly influence the result.

"However, before dealing with the interesting question of the proper interpretation of this statute in this respect it is first necessary to determine whether the fund in controversy or any part thereof is shown by the testimony in this case to be 'purse, prize, premium or stake contested for' within the meaning of this statute.

"It is undisputed that at the beginning of this race meeting on August 15, 1931, Mr. James C. Ellis, president of the defendant corporation, advanced to the corporation out of his personal account $65,000 by delivering to the cashier, Mr. Respass, his personal check for that amount. The dispute arises as to the purpose for which this money was to be used. Mr. Ellis testified that he advanced this fund to be used exclusively for the payment of purses. Other testimony for the defendant, however, shows without question that all purse winners were paid by check drawn by the corporation on the National City Bank of Evansville, Ind., and that Mr. Ellis arranged with the bank to pay these checks out of the funds there on deposit to his personal credit. The cashier, Mr. Respass, to whom Mr. Ellis delivered the check for the $65,000 referred to, immediately cashed the check and took the cash to the place at the track known and designated as 'the money room.' The cashier in his testimony refers to this fund as the 'bank roll.' On page 110 of the record the cashier, Mr. Respass, testifies as follows: 'Q. 97. What did Mr. Ellis say to you when he gave you a check for $65,000.00 and told you to take it to the bank and cash it? A. He told me to get the money so we would have it to start off with and cash checks with.'

"On page 112 and 113 of the record Mr. Respass further testified as follows: 'Q. Mr. Respass, do you mean to have the court to understand that you had no right to use the money for any purpose excepting to pay purses and you mean to have the court understand that this money was turned over to you for the sole purpose of paying purses? A. No, I had the money there to use to pay checks if any of them were presented to me.'

"Mr. Respass further testified that, when he arrived each morning with the bank roll of $65,000,

he delivered from $20,000 to $30,000 of the bank roll to the cashiers who operated the pari mutuel betting machines; and also provided money for the admission ticket sellers at the gates for making change; he states that from time to time the money taken by the sellers of pari mutuel tickets would be brought to the money room. Out of this he retained 10 per cent. commission for the corporation. The funds in the money room were commingled, and out of the commingled funds the winning pari mutuel tickets were paid as presented. Some purse winners had their purse checks cashed out of these funds kept in the money room. Others holding purse checks presented them for payment in the usual course of business, and they were paid by the bank on which they were drawn out of funds other than the money which was kept in this money room. The testimony shows that personal checks of patrons of the track, who were known to the cashier, would be cashed out of these funds in the money room merely as an accommodation to the patrons. The money which passed through the money room from the betting machines sometimes amounted to more than $100,000 in one day. In fact, on August 22d the pari mutuel business amounted to $112,201. At the end of each day the cashier replenished any depletion in his bank roll so as to maintain it at $65,000, and deposited the remainder of his receipts, together with all checks on hand, to the personal credit of Mr. James C. Ellis at the National City Bank of Evansville, Ind.

"The money found in the hands of the cashier on the day the attachment was levied was there as the result of Mr. Ellis' original advancement and the subsequent operations above described, which had been in progress about two weeks. It may be here further noted that all income derived from all operations at the track was placed to the personal credit of Mr. Ellis in the bank at Evansville.

"The books kept by the corporation were introduced in evidence by the defendant. A horseman's ledger was kept by the bookkeeper, Mr. J. B. Burton, in which he kept a record of the amount of the purses and the winners thereof. When each race was finished, he credited to the winning horseman on this ledger the amount of his winnings, and from

this ledger issued checks as called for by the winners. It is rather significant that this horseman's ledger, which is the corporation's record of purses, has no entry of any character relative to the $65,000 which Mr. Ellis asserts he designated for payment of purses only, and against which it would naturally be expected to have the purses charged.

"The corporation kept another ledger showing an account of its pari mutuel operations. A page from this ledger is copied on page 158 of the record in this case. It is impressive to notice that the entire amount advanced by Mr. Ellis is entered on this pari mutuel roll, $65,000. When considered in connection with the other testimony in the case, this record kept by the defendant seems convincing that the funds advanced by Mr. Ellis above referred to were not exclusive for the payment of purse money, but were funds provided primarily for the purpose of operating the pari mutuel betting enterprise and were correctly termed and identified on the defendant's records as "mutuel bank roll.' The fact that from time to time checks representing purse winnings were cashed out of this bank roll seems entirely insufficient to identify these funds as exclusively for 'purses, prizes, premiums or stakes' within the meaning of the statute above quoted. Having reached this conclusion, it is unnecessary to determine whether a sufficiently designated or identified contribution when made exclusively for purposes would be impressed with the character of trust as claimed by the defendant or would be held according to the interpretation sought to be given to the statute by the plaintiff in this case.''

Appellant's contention that the attached fund included $9,112.89 belonging to holders of winning pari mutuel tickets which had not been presented for payment and which it merely held as bailee was not subject to attachment is as effectually answered by the chancellor by pointing out that $10,541.27 has already been released which is more than sufficient to cover its liability as such alleged bailee.

Finally, it is argued that neither penalty nor costs bear interest, and that the judgment is erroneous, in that it allows interest on such items. Section 4174, Kentucky Statutes, provides that judgments in cases

referred to in preceding sections (4169 et seq.) shall be for the principal due, with interest at the rate of 10 per cent. per annum, etc. Under this section it is manifest that the court did not err in allowing 10 per cent. on the full amount of the former judgment from date of entry of the judgment appealed from. There might be merit in appellant's contention if the penalty had not been reduced to judgment; however, such a question is not presented. The commonwealth is entitled to recover the principal sum of the former judgment with interest as above indicated, but is not entitled to recover such interest on the sums retained as estimated costs of this action, however, a matter of such trivial consequence would not authorize a reversal of the judgment; but the lower court, upon a return of the case, will by order modify the judgment so as to conform to this opinion with respect to the calculation of interest and will make such order with reference to any of the balance of the sums retained to cover probable costs, after the costs have been fully satisfied, as will protect the interest of the parties.

Judgment affirmed.