**FORCUM–LANNON, INC., Appellant,**

**v.**

**Tommy WELLS et al., Appellees.**

Court of Appeals of Kentucky.

March 14, 1969.

Robert M. Spragens, Lebanon, for appellant.

Fred Faulkner, Jr., Campbellsville, for appellees.

REED, Judge.

Appellees, subcontractors for excavation work, recovered a judgment against appellant, a general contractor. The project involved was the construction of a 70-unit housing project in Campbellsville. The judgment was in the amount of $2,775.90, and represented claimed additional excavaton work not covered by the original contract.

The original contract was between appellant and the Campbellsville Municipal Housing Commission. For convenience hereinafter, we will refer to appellant as the "general contractor;" appellees as the "subcontractor," and the Campbellsville Housing Commission as "owner."

The original contract required the general contractor to perform excavation and filling to effect a grade level and obligated the general contractor to provide clean suitable earth for requisite fill if a sufficient quantity of suitable dirt was not available from the required excavation on the site. This contract incorporated by reference specifications prepared by the owner's architect. It also recited that claims for additional compensation for extra work would not be recognized unless accompanied by certified survey data made prior to the time the

original ground was disturbed. Another provision of the contract required that any claimed discrepancy between the actual conditions and those represented by the plans must be reported to the owner and that work should not proceed until written instructions had been received by the general contractor from the owner. This contract was dated November 16, 1964.

It appears that a subcontract evidenced by a writing dated November 9, 1964, was entered into between the general contractor and the subcontractor. By the terms of this instrument, the subcontractor agreed to perform strictly in the terms of the general contract and the plans and specifications thereof which were incorporated by reference into the subcontract. This written instrument evidencing the agreement between the general contractor and the subcontractor further recited that the subcontractor assumed toward the general contractor all the obligations and responsibilities that the general contractor assumed toward the owner so far as this excavation work was concerned.

The subcontractor agreed to perform the required excavation work for a lump sum of $19,100.

Both parties to the dispute admitted that the original plans governing the excavation work were in error by reason of a faulty survey. The topography of the job site on which the plans were based was not as represented on the survey furnished by the owner to its architect. The result was that insufficient dirt would be yielded by the excavation to adequately fill the lower areas so as to effect a level grade.

The subcontractor had barely commenced work when it was stopped by the general contractor upon discovery of the error. The general contractor notified the owner of the mistake. The owner's architect calculated that approximately 8,000 cubic yards of dirt would have to be hauled in from off the job site in order to comply with the plans.

At the request of the owner and its architect, the general contractor asked the subcontractor for a bid price on this required amount of off-site dirt. The subcontractor furnished the price.

The owner and its architect concluded that the expense of hauling additional off-site dirt was too great and the architect thereupon revised the plans. Without notice to or knowledge on the part of the subcontractor, the owner and the general contractor agreed that the new revised plans required no more work so far as excavation and filling were concerned than did the original plan.

The general contractor agreed in writing with the owner to perform according to the revised plans without additional charge for the earth work required. The subcontractor was given no opportunity to participate in these negotiations nor was it a party to this agreement respecting the revised plans.

Thereupon, the general contractor through its superintendent instructed the subcontractor to proceed with the excavation and filling. The subcontractor did not inspect the revised plans but relied wholly upon the instructions given to him during the progress of the work by the general contractor's superintendent. When the subcontractor inquired as to whether the revised plans necessitated a new trade since he was bound by a lump-sum price, the general contractor's superintendent gave assurances there was nothing to worry about since the job had been "lowered out of the air."

Near the completion of the job, the subcontractor was dissatisfied and obtained the services of Ellis, a civil engineer, to determine whether or not he had been required to excavate additional material over and above that required by the original plans on which he had based his lump-sum price. Ellis reviewed the original plans and the revised plans and testified that the original plans required the excavation of 16,838 cubic yards of dirt; that the revised

plans required the excavation of 26,091 cubic yards of dirt; therefore, the subcontractor had excavated an additional 9,253 cubic yards of dirt over and above the amount required by the original plans.

The subcontractor testified that a reasonable charge for this excavation in the community was 60 cents per cubic yard. A qualified witness for the general contractor testified that a fair and reasonable charge in the community was 30 cents per cubic yard.

The owner's architect testified that there was no difference between the amount of earth work required by the original plans and the revised plans. The subcontractor claimed compensation for excavation of rock not required by the original plans but necessitated by the revised plans.

The case was tried before the court without a jury and the trial judge awarded the subcontractor the sum of $2,775.90 which the record reveals was determined by applying a unit price of 30 cents per cubic yard to the difference of 9,253 cubic yards established by the testimony of Ellis. No recovery was allowed on the claim for rock.

■ The general contractor advances two principal arguments on which it relies for reversal. The first argument is that the testimony of Ellis had no probative value because Ellis calculated only the excavation to be performed and not the fill. The general contractor points out that the original contract required that if additional off site dirt was needed it must be provided by the contractor at his own expense.

The difficulty with this argument is that the owner and the general contractor did not treat this provision as controlling when they negotiated and agreed as a result of the mistake of the owner's survey. It was contemplated by all parties to the contract beyond dispute that this was to be a balanced job. A balanced job means that the excavation on the job site will provide sufficient dirt to fill the lower areas to the

required grade level. It was also contemplated by the parties that the revised plans provided for a balanced job. None of the parties to the contract or the subcontract ever contemplated the project as constituting anything other than a balanced job.

In view of these circumstances, it seems to us that it would be anomalous if the general contractor were permitted to adopt a construction of the contractual undertaking against the subcontractor diametrically opposed to the agreement concering this contractual undertaking which was effected between the general contractor and the owner. We deem this argument to be without merit. Hence, it follows that the trial court had the right to accept the testimony of Ellis if it chose to believe it. See 13 Am.Jur.2d, Building, Etc., Contracts, Section 125, p. 116.

■ The second argument advanced by the general contractor is that even assuming the subcontractor performed additional excavation work and properly proved the extent of it and its reasonable value, recovery must still be denied because the subcontractor failed to comply with the requirements of the agreement which authorized it to receive pay for additional work.

The written instrument between the subcontractor and the general contractor recited that the subcontractor assumed toward the general contractor all of the obligations and responsibilities that the general contractor assumed toward the owner in the original contract. The general contractor is the party who discovered the mistake of the owner's architect. He notified the subcontractor concerning the mistake and undertook to manage the affair. We, therefore, fail to understand how the subcontractor could be held to have violated any requirement of notice concerning the survey error either toward the owner or toward the general contractor. So far as the original contract is concerned, the only requirement on discovery of such a mistake as is here presented was that the owner be notified at once and the work stopped.

This is exactly what was done. The subcontractor ceased work and did not again commence until notified to do so by the general contractor. The subcontractor thereafter proceeded to perform according to the instructions of the general contractor and under its supervision. The general contractor accepted the benefit of the work. We can find no breach by the subcontractor of any requirement in the original contract or in the written instrument between it and the general contractor which would warrant denying recovery for the additional excavation found by the trial court to have been performed.

It is significant to note that the "additional work" for which a recovery was allowed to the subcontractor is work that was necessarily required in the performance of the contract and without which it could not have been carried out. See Dance et al v. Board of Education of City of Middlesboro, 296 Ky. 67, 176 S.W.2d 90. Also see 66 A.L.R., Building Contract—Alterations And Extras, pp. 649–703; 2 A.L.R.3d, Private Construction Contract—Extras, pp. 620 to 694.

In Pittsburgh Filter Mfg. Co. v. Smith, 176 Ky. 554, 196 S.W. 150, a general contractor contracted with a water company to build a filter plant and thereafter sublet the work of excavation to a subcontractor. A part of this work done by the subcontractor for the general contractor was what was required of the general contractor by its contract with the owner to be done for a lump sum to be paid it. The general contractor required the subcontractor to do additional excavation. It was held that the general contractor was liable to the subcontractor even though the owner was not liable to the general contractor by reason of an agreement between the owner and the general contractor after discovery of a mistake which necessitated additional excavation.

It is our conclusion that the findings of fact of the trial court are not clearly erroneous. CR 52. We find no error of law.

The judgment is affirmed.

All concur.