CALUMET REFINING CO. v. STAR LUBRICATING CO.

No. 4148.   Decided November 25, 1924.   (230 Pac. 1028.)

1. SALES—INSERTION OF TERMS OF PAYMENT IN TELEGRAM, CONFIRMING SALE BY AGENT, HELD NOT TO MAKE ACCEPTANCE CONDITIONAL. Insertion in telegram, confirming sale by agent, of terms of payment, customary in trade, and in use between buyer and seller in prior dealings, did not make acceptance of buyer's order conditional.

2. CONTRACTS—INTENTION TO COMMIT VERBAL CONTRACT, WHOSE TERMS WERE UNDERSTOOD TO WRITING DOES NOT AFFECT SUCH CONTRACT. Mere fact of understanding or intention to commit verbal contract to writing, when it is legal and binding, does not affect such contract, if terms thereof are agreed upon.

3. SALES—CONFIRMATION OF SALE BY AGENT, AND ACCEPTANCE OF ORDERS THEREUNDER, HELD TO MAKE BINDING CONTRACT, ALTHOUGH WRITTEN CONTRACT WAS NOT EXECUTED. Where sale by seller's agent was confirmed by telegram containing statement "mailing contract," and seller supplied goods ordered thereunder, contract was binding, although written contract mailed to buyer was never executed.

4. SALES—TESTIMONY HELD SUFFICIENT TO SUPPORT FINDING AS TO DAMAGES FROM SELLER'S BREACH OF CONTRACT. In action in which buyer counterclaimed for breach of contract of sale, evidence as to market value of goods, when defendant was required to buy them in open market, held sufficient to support judgment as to amount of damages.

See 13 C. J., p. 291; 35 Cyc., pp. 53, 55, 631.

Appeal from District Court, Third District, Salt Lake County; L. B. Wight, Judge.

Action by the Calumet Refining Company against the Star Lubricating Company, in which defendant set up a counter-

claim. From judgment for defendant, plaintiff appeals.

AFFIRMED.

*Booth, Lee, Badger & Rich* and *J. R. Thomas,* all of Salt Lake City, for appellant.

*Fabian & Clendenin,* of Salt Lake City, for respondent.

GIDEON, J.

The appellant (plaintiff below) seeks judgment for the amount of a trade acceptance executed by respondent (defendant below) for merchandise sold by appellant to respondent. The answer admits the making and delivery of the trade acceptance. As an affirmative defense, and by way of counterclaim, the respondent claims damages for braech of a contract alleged to have been made between appellant and respondent on or about September 6, 1921, for the sale of certain lubricating oils.

The case was tried to the court without a jury. The court found that respondent was indebted to appellant in the sum named in the trade acceptance. It also found that the appellant had broken its contract with respondent, and that respondent had suffered damages in an amount in excess of the amount due appellant under the trade acceptance. The court thereupon credited the amount of respondent's damages with the amount of the trade acceptance, and entered judgment in favor of respondent and against appellant for the difference. Motion for new trial was made and denied. To reverse the judgment, this appeal is taken.

Appellant's claim for reversal of the judgment is based on two grounds: (1) That the evidence fails to show a contract between appellant and respondent; and (2) that there is no proof to support the court's finding as to damages for the alleged breach.

The appellant is an Illinois corporation, with its principal place of business in the city of Chicago, and was engaged in refining and marketing lubricating oils. Respondent is a copartnership, engaged in buying and selling lubricating oils as a "jobber" at Salt Lake City.

The controlling issue, stated in the language of appellant's brief, is as follows:

"The main issue in this case is the determination of whether or not there was a contract between plaintiff and defendants for 1,000 barrels of oil. Defendants virtually concede that if there was no such contract their counterclaim must fail. It is further conceded that if a contract was created it was wholly documentary, and must be found in the terms of the documents, plaintiff's Exhibits 1, 2, and 3."

The appellant and respondent had had business relations prior to the contract in controversy. Beginning about the month of March, 1921, respondent had purchased from the appellant at least five carloads of lubricating oil. Immediately prior to September 6, 1921, the sales representative of the appellant company came to Salt Lake City, and entered into negotiations with respondent for the sale of such oil as respondent would need in its trade. At the termination of these negotiations, respondent delivered to appellant an order or contract for the purchase of 1,000 barrels of oil. That order is designated and referred to as order No. 1227, and is known in the record as plaintiff's Exhibit 1. It was delivered to a Mr. Mott, sales representative of appellant company, and by him forwarded to the appellant. On said September 6th the sales representative sent to the appellant the following telegram:

"Have Star order thousand barrels Starco Special and heavy forty-four one held and forty eight cents in wood freight allowed Salt Lake. This includes one eighty at hundred Penna thirty nine one-half cent to be taken out prior April first (stop). If you want only five hundred barrel to January first wire accordingly direct compound Penna three F sold subject wire confirmation direct. Leaving for Denver this evening."

On the same day appellant sent a telegram direct to respondent as follows:

"Confirm Mister Mott's sale one thousand wood barrels Starco Special forty four and half cents Starco Heavy forty eight cents hundred eighty at hundred Pennsylvania Neutral thirty nine and half cents F. O. B. Chicago including barrels less freight and war tax to Salt Lake in car lots shipment about equally distributed over period from this date until April first next year. Terms one per cent ten days or thirty day trade acceptance. Starco special and Heavy compounded hundred eighty Pennsylvania Neutral and three F. Mailing Contract. Thanks."

The question here is whether these two telegrams constitute a binding contract, or whether the wording of the reply of the appellant is a conditional acceptance of the offer contained in the telegram of Mr. Mott and order No. 1227, above mentioned. It is contended by appellant that the insertion of the terms of payment in the telegram of confirmation negatives the claim of an unconditional acceptance of the offer contained in Mr. Mott's telegram; also, that the words "mailing contract" indicate that there had not been an unreserved acceptance of the offer, but that the offer had been accepted, with such modifications as should be contained in the contract then being mailed to respondent. It is in the testimony that in the prior dealings between the parties the time and terms of payment were the same as specified in the telegrams confirming the contracts of sale. It is also in the testimony that these were the usual terms for payment between seller and buyer in this particular class of goods.

Appellant relies upon the universally accepted rule of law that the minds of the parties must meet on all of the terms of the contract before a binding contract comes into existence. The respondent does not take issue with that claim, but insists that in this case there was no variance or modification or a conditional acceptance of the order of sale; that, by reason of the former dealings between the parties and the recognized custom of the trade, the insertion in the telegram of the words, "terms one per cent. ten days or thirty day trade acceptance," did not modify or make the acceptance conditional, and that they added nothing to the acceptance, except what was implied as a matter of fact, and as matter of law.

The principle or rule of law applicable, and which in our judgment is controlling here, is stated in Williston on Contracts (2d Ed.) § 78, as follows:

"Sometimes an acceptor from abundance of caution inserts a condition in his acceptance which merely expresses what would be implied in fact or in law from the offer. As such a condition does not interfere with the expression of assent to all the terms of the offer, a binding contract is formed." (Citing *Bennett* v. *Cummings*, 73 Kan. 647, 85 P. 755; *Cavender* v. *Waddingham*, 5 Mo. App. 457; *Grimsrud Shoe Co.* v. *Jackson*, 22 S. D. 114, 115 N. W. 656; *Curtis Land & Loan Co.* v. *Interior Land Co.*, 137 Wis. 341, 118 N. W. 853, 129 Am. St. Rep. 1068.

Because of the former relationship of the parties, and because of the testimony as to the custom of the trade, the insertion of these words in the telegram of confirmation does not, in our opinion, amount to a conditional acceptance, nor does it add anything or detract anything from the offer contained in Mr. Mott's telegram.

As to the words "Mailing Contract," the authorities seem to agree that the mere fact of an understanding or intention to commit to writing a verbal contract, when such verbal contract is legal and binding, does not affect such verbal contract or the liabilities of the parties thereunder, if all the terms of the contract are understood and agreed upon. The general rule applicable is stated in *Western Roof. Tile Co.* v. *Jones*, 26 Okl. 215, Ann. Cas. 1912B, 127, 109 P. 227, as follows:

"The rule in reference to the question here presented is that, where parties desire to make the reduction of any agreement into which they have entered to writing and its signature a condition precedent to its completion, it will not be a contract until this is done, and this is true, although all the terms of the contract have been agreed upon. But, where parties have assented to all the terms of the contract, and they are fully understood in the same way by each of them, the mere reference in conjunction therewith of a future contract in writing will not negative the existence of a present contract. The question involved is always one of intention" (citing numerous cases).

See, also, *Sou. Ry. Co.* v. *Huntsville Lbr. Co.*, 191 Ala. 333, 67 So. 695; *Conner* v. *Plank*, 25 Cal. App. 516, 144 P. 295.

The contract mentioned in the telegram of appellant was received by the respondent, but was never executed, and, while some reference is made to the contract in later correspondence, nothing further was done regarding its execution. That the appellant did not construe the execution of the contract as essential to the existence or completion of the contract of sale is conclusively proved by its conduct and its later dealings with the respondent. Contemporaneous with the execution and delivery of order No. 1227, and, on the same day that the Mott telegram was sent, the respondent gave an order for the shipment of one carload of oil, under the terms of order 1227, and as stated in the telegram. That order was filled by the appellant company, trade acceptance was forwarded to appellant by respondent, and was afterwards paid. Again, on October 3, an additional order was forwarded to appellant, was filed, and trade acceptance forwarded to appellant by respondent. In both of these instances reference was made to order 1227, and not to any other alleged contract. We have, then, a contemporaneous construction on the part of appellant that there was an existing contract, by its acceptance of the orders referred to, and its filling of the orders under the agreement embodied in order 1227. The findings of the court, therefore, that there was an existing contract between the parties for the sale of 1,000 barrels of oil, are amply supported by the record.

A still later order was forwarded to appellant, which it failed to fill, and from that time on no further sales were made under or by virtue of the terms of the contract or otherwise.

It is in the testimony of respondent that, by reason of the failure to furnish the oil as provided in the contract, it was compelled to go into the open market and buy oil to meet the contract demands of its customers, and that in purchasing such oil it was required to pay, in excess of the contract price with appellant, the amount found by the court as damages. It is argued by appellant that there is no proof that the market value of the oil contracted to be sold was

different at the time respondent was required to purchase in the open market than the price specified in the contract. It may be seriously doubted that the particular oil mentioned in the contract would have a market price. It seems to have been of particular stock made up under particular specifications outlined in the telegram, and therefore a part of the contract of sale. But, be that as it may, the record, in our judgment, supports the findings of the court as to the amount of damages sustained. The testimony of one of respondent's witnesses is that it was impossible for respondent to obtain the stock from appellant, and that it was compelled to enter into the market and buy where best it could. The same witness also testified that Fred G. Clark Company, from whom the oil was purchased, offered the best proposition obtainable, and that it was compelled to give that company the order for the required oils to meet the demands of respondent's customers. It is true the words "market price" are not used, but the testimony that respondent accepted the best proposition obtainable would fairly indicate that it paid no more than such price as would constitute the "market price" for the particular goods desired.

We find no reversible error in the record. Judgment is affirmed, with costs.

WEBER, C. J., and FRICK and CHERRY, JJ., and DILWORTH WOOLLEY, District Judge, concur.

THURMAN, J., did not participate herein.