# CAMPBELL BUILDING CO. v. STATE ROAD COMMISSION.

No. 5803. Decided August 3, 1937. (70 P. 2d 857.)

Rehearing Denied August 18, 1938.

244

*Allen T. Sanford* and *E. A. Rogers*, both of Salt Lake City, for appellant.

*Joseph Chez*, Atty. Gen., and *Wm. A. Hilton*, of Salt Lake City, for respondent.

FOLLAND, Chief Justice.

This is an action for damages, for payment for extra work, and for balance claimed to be due arising out of the performance of a contract entered into between the State Road Commission of Utah and the Campbell Building Company for the construction of about 15 miles of road on the main state highway southerly from Kanosh in Millard county, Utah. The contract was let under the Emergency Work Program in August or September, 1932, and was known as Federal Aid Project 68-B. The work was completed in the spring of 1933. The project was financed by the federal government under an Act of Congress known as the Emergency Relief and Construction Act of 1932, 47 Stat. 709. It fixed the dead line of completion of projects under the act as July 1, 1933. The act required contracts under it to set forth special provisions for doing such work with minimum rates of wages and hours per week the men would be permitted to work. The maximum of hand labor and team use were also required. The purpose was to give work to the greatest number of persons possible. The complaint contains three causes of action and each cause of action covers a number of different items, so that there are 26 separate and distinct items or claims described by appellant as "each of itself an independent lawsuit." The estimated cost of the work was $68,834.10. The amount computed and allowed by the state after completion of the work was $72,978. The

amount sued for in plaintiff's complaint is $43,980.21, including the sum of $7,297.80 withheld by the state for final settlement.

After trial to the court, sitting without a jury, the court made findings of fact and conclusions of law favorable to defendant's contentions and entered judgment for defendant and against plaintiff. The 112 assignments of error are to the making of findings of fact and conclusions of law, the entry of judgment, overruling plaintiff's motion for a new trial, and to the striking of certain testimony. Before discussing the separate items for which a money judgment is claimed, we shall address ourselves to the matters which involve the right of plaintiff to maintain the action.

It is contended by defendant that the action cannot be maintained for reasons which we shall presently set forth. It is further contended by defendant that should the court hold against its contention that the State Road Commission cannot be sued by the contractor in the present form of action, yet the findings and judgment must be sustained because there is substantial evidence in the record which supports each and all of the court's findings and that the judgment responds to such findings.

The reasons urged by defendant why this action cannot be maintained by plaintiff are as follows:

"(1) That all highways are owned by the State, and under the exclusive jurisdiction of the State, and that the legislative power over State highways is supreme. (2) That the construction of highways in Utah is a purely governmental function. (3) That the State Road Commission is a creature of statute or an arm or agency of the sovereign State of Utah and its officers are State officers. (4) That notwithstanding the State Road Commission can be sued, it can be sued only for specific performance of written contracts made by it or under its authority. (5) That the State Road Commission or the State of Utah is not liable for damages resulting from the misfeasance, malfeasance, laches, misconduct or unauthorized acts of its officers. (6) That the Constitution and laws of Utah provide an exclusive procedure for the filing of claims against the State. (7) That the State of Utah is not liable on its contracts as would be an individual."

The propositions contained under headings Nos. (1) and (2) are not disputed by plaintiff and for the purpose of this case may be taken as true. Elliott on Roads (4th Ed.) §§ 10, 465, 509, and 511; *Union Trust Co.* v. *State of California*, 154 Cal. 716, 99 P. 183, 24 L. R. A. (N. S.) 1111; *Independence Trust Co.* v. *Porter*, 190 N. C. 680, 130 S. E. 547. Proposition No. (3), to the affect that the State Road Commission is an arm or agency of the state, is also not disputed and may be affirmed. Indeed, the statute seems clearly to contemplate that this is true. R. S. Utah 1933, 36-2-3 and 36-2-4, as amended by chapter 28, Laws of Utah, 1933, p. 42, and chapter 36, Laws of Utah, 1935, p. 35, and chapter 39, Laws of Utah, 1937, p. 77. It is not a separate corporate or political body. *Looney* v. *Stryker*, 31 N. M. 557, 249 P. 112, 50 A. L. R. 1404; *Independence Trust Co.* v. *Porter*, supra; *Gresty* v. *Darby*, 146 Kan. 63, 68 P. (2d) 649. The members of the State Road Commission are state officers. *Industrial Comm. of Arizona* v. *State Highway Commission*, 40 Ariz. 163, 10 P. (2d) 1046; *Arkansas State Highway Comm.* v. *Nelson Bros.*, 191 Ark. 629, 87 S. W. (2d) 394. It would follow, therefore, that where the State Road Commission is sued as in this case, not individually, but in its official capacity, the action is, in effect, one against the state. *State Highway Comm. of Wyoming* v. *Utah Construction Co.*, 278 U. S. 194, 49 S. Ct. 104, 73 L. Ed. 262 (in District Court, 16 F. (2d) 322; [C. C. A.] 23 F. (2d) 638); *Carpenter* v. *Atlanta & C. A. L. Ry. Co.*, 184 N. C. 400, 114 S. E. 693; *State Highway Comm.* v. *Kansas City Bridge Co.* (C. C. A.) 81 F. (2d) 689; *United Contracting Co.* v. *Duby*, 134 Or. 1, 292 P. 309. In an action against the state board of land commissioners, where any recovery would affect state funds, the action was held to be one against the state. *Wilkinson* v. *State*, 42 Utah 483, 134 P. 626.

This action may not be maintained unless the state has, through legislative or constitutional action, given consent to be sued. *Carpenter* v. *Atlanta & C. A. L. Ry. Co.*, supra;

*Looney* v. *Stryker*, supra; *Mills* v. *Stewart*, 76 Mont. 429, 247 P. 332, 47 A. L. R. 424; *Cassidy* v. *City of St. Joseph*, 247 Mo. 197, 152 S. W. 306; *Hampton* v. *State Board of Education*, 90 Fla. 88, 105 So. 323, 42 A. L. R. 1456, ∎ and note at page 1464. Consent to suit has been given with respect to contracts of the State Road Commission in section 36-2-1, R. S. 1933, wherein the statute reads:

"By its name the commission may sue, and it may be sued only on written contracts made by it or under its authority."

The scope of this consent or waiver of immunity, we shall discuss under another head.

Proposition No. (6) may be accepted as true; that is, that the exclusive procedure for the filing of claims against the state is with the board of examiners as provided in the Constitution, art. 7, § 13, and by R. S. 1933, 26- ∎ 0-1, 26-0-9, and 26-0-10. *State ex rel. Davis* v. *Edwards*, 33 Utah 243, 93 P. 720; *Uintah State Bank* v. *Ajax, Auditor*, 77 Utah, 455, 297 P. 434.

It is not now necessary for us to decide whether the only method by which plaintiff could satisfy any judgment it might obtain would be by filing the claim evidenced by the judgment with the board of examiners and, in the event there was no appropriation out of which it could be paid to then go to the Legislature for such appropriation. 59 C. J. 306. How the judgment may be enforced, if one is obtained, is quite another matter from the problem for us to decide, which is, whether plaintiff may proceed in the courts to have its claim liquidated.

The vital questions in dispute are those stated in defendant's propositions Nos. (4), (5), and (7), supra. These involve a determination of the meaning and scope of application that the "commission * * * may be sued only on written contracts made by it or under its authority."

The defendant contends, first, that it may be sued "only for specific performance of written contracts made by it or under its authority" and this case not being one for spe-

cific performance of the contract or to require payment of funds under it, but being for damages, extra work and balance due resulting from its performance, the action will not lie. It is also argued by defendant that the statute above quoted "does not create liability and a suit is maintainable thereunder only for liability authorized by law." This latter suggestion will be answered in the course of our discussion.

The statutory provision is twofold. First, it waives immunity from suit by saying "the commission * * * may be sued," and, second, a limitation is imposed by the following language: "only on written contracts made by it or under its authority." We have in a previous case held that the provision, "By its name the commission may sue, and it may be sued only on written contracts made by it or under its authority," is not open to the construction that the commission may sue only on its written contracts, and we have said that the qualifying phrase evidences a "wish by the lawmaking power" to limit actions against the commission to actions upon written contracts. *Barnes* v. *Wade,* 90 Utah 1, 58 P. (2d) 297, 298. It was there held that the commission may in its name sue to condemn property for road purposes and that by bringing the suit it assumes all liabilities incident to the proceedings.

The contract in question is one made by the commission under its authority. It is such a contract as may be "sued on" under the statute. The defendant says that the right to sue the State Road Commission conferred by the statute "only embraces suits in specific performance of the written contracts it has power to make and for funds payable under such contracts for road construction only." The statute, however, places no such restriction on the right to sue, but merely says the commission may be sued on its written contracts. We find no authority and none is cited which construes such language as meaning a right to sue only for specific performance of a contract. We have no constitutional provision inhibiting the legislature from waiving immunity from suit, as in some states. *Ar-*

*kansas State Highway Comm.* v. *Nelson Bros.,* supra. But when there is statutory consent to sue, the statute is the measure of the power to sue. *State Highway Comm.* v. *Gully,* 167 Miss. 631, 145 So. 351; 59 C. J. 304; Note, 42 A. L. R. 1477. And will be strictly construed. *Gill* v. *Johnson,* 103 Cal. App. 234, 284 P. 510; *Lyle* v. *National Home for Disabled Volunteer Soldiers* (C. C.) 170 F. 842.

The statutory provision must mean what the language naturally imports, that any suit on a written contract which could be brought by the contractor against the other contracting patry, if an individual, corporation, or municipality, might now be maintained under this authorization against the State Road Commission acting for the state. 29 C. J. 567; *Horn* v. *Matagorda County* (Tex. Com. App.) 213 S. W. 934.

It may be helpful in determining what is within the scope of the statute to consider what is clearly not within the orbit of its operation. It is undoubtedly true that the waiving of immunity from suit does not of itself create any new liability against the state or prevent it from setting up any defense it may have to the suit. Consent to be sued on certain contracts has certainly not opened the door to liability on account of the negligence or misconduct or willful conduct or unauthorized acts of officers or agents of the state. There is no permission for a suit on account of a tort. *Stewart* v. *State Highway Comm.,* 166 Miss. 43, 148 So. 218; *Billings* v. *State,* 27 Wash. 288, 67 P. 583; *Riddoch* v. *State,* 68 Wash. 329, 123 P. 450, 42 L. R. A. (N. S.) 251, Ann. Cas. 1913E, 1033; *Carpenter* v. *Atlanta & C. A. L. Ry. Co.* supra; *Davis* v. *State,* 30 Idaho 137, 163 P. 373, Ann. Cas. 1918D, 911; *Walker* v. *Department of Public Works,* 108 Cal. App. 508, 291 P. 907. On the other hand, it would be competent for the Legislature, if it chose to do so, to assume liability for a tort of the state and provide for payment of damages. *Mills* v. *Stewart,* 76 Mont. 429, 247 P. 332, 47 A. L. R. 424. Ordinarily, the consent of the state to be sued merely waives the immunity from suit

and does not create liability or concede a cause of action. Note, 42 A. L. R. 1492; *Billings* v. *State*, supra. As to its contracts, the state should be held to the same rules and principles of construction and application of contract provisions as govern persons and corporations in contracting with each other. *State* v. *Feigel*, 204 Ind. 438, 178 N. E. 435; *McDonald* v. *State*, 203 Wis. 649, 235 N. W. 1; *Carr* v. *State*, 127 Ind. 204, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. Rep. 624; Donnelly on the Law of Public Contracts, p. 265. In 25 R. C. L. 392, it is said:

"A state entering into contracts lays aside its attributes of sovereignty, and binds itself substantially as one of its citizens does when he enters into a contract, and, in general, its contracts are interpreted as the contracts of individuals are, and controlled by the same laws. But aside from the fact that a contract of the state must ordinarily rest upon some legislative enactment and in this respect is distinguished from contracts with individuals, there is another essential and far-reaching difference between the contracts of citizens and those of sovereigns, not, indeed, as to the meaning and effect of the contract itself, but as to the capacity of the sovereign to defeat the enforcement of its contract. The one may defeat enforcement, but the other cannot. This result flows from the established principle that a state cannot be sued."

And, at page 406 of the same volume:

"The state when making a contract with an individual is liable (though not suable without its consent) for a breach of its agreement in like manner as an individual contractor. While it may refuse to respond in damages and leave a claimant without any remedy, as it may refuse to pay its bonds, the obligation remains. No legislative fiat can destroy or impair that."

We conclude that a suit against the state may not be maintained for negligence or tort because no authorization for such is found in the statutes. It may be sued only for liabilities arising out of a written contract. *Chapman* v. *State*, 104 Cal. 690, 38 P. 457, 43 Am. St. Rep., 158. Damages allowed for breach of contract are the judicial method of satisfying the contract. *Horn* v. *Matagorda County*, supra.

The cases hold, and that is the reasonable view to take, that where work is delayed by failure to provide right of way or by interference of the state engineer, causing extra expense, such are matters of breach of contract, and whether or not negligence enters into the matter is of no moment. *Schunnemunk Construction Co.* v. *State,* ▆▆ 116 Misc. 770, 189 N. Y. S. 569. When the contractor is placed by act of the state in a position that it becomes necessary for him to incur the burden of extra work to complete the job agreed upon, he is entitled to just compensation therefor. *McDonald* v. *State,* supra. Holding, as we do, that the contractor may maintain a suit on the contract or for liability arising out of the execution of the contract, we must examine each of the items for which damages or extra compensation is claimed to determine whether it is a claim or demand for which suit may lie, and, if so, whether the court's finding on merits is sustained by evidence.

Almost every finding of fact is challenged as not being supported by the evidence. This being a law action, no finding of the court will be disturbed where the evidence is in conflict and there is substantial evidence ▆ to sustain it. *Wilson* v. *Salt Lake City,* 52 Utah 506, 174 P. 847.

We shall examine the law respecting extra or additional work, since many of the claims asserted are said to be for extra work. The contract provisions are as follows:

"A-23. Alterations of Plans and Character of Work. The Engineer reserves the right to alter the grade and alignment, and to increase the length of the project in an amount not to exceed 1000 linear feet, and make such other changes as may be deemed necessary from time to time to complete fully and perfectly the construction of the roadway. Should such changes result in an increase or decrease of the quantity of work to be done, the Contractor shall accept payment in full at the contract unit prices for the actual quantity of work done providing the total cost of the grading quantities or the total cost of the surfacing quantities or the total cost of the structural quantities are not increased or decreased more than twenty (20%) per cent of the total cost of each classification when computed at the proposal

rates. When the quantity of work of any of the three classifications specified exceeds twenty (20%) per cent the quantity in excess of twenty (20%) per cent shall be paid for as extra work. When such quantities are diminished more than twenty (20%) per cent., a reasonable adjustment shall be made."

"A-24. Extra Work. New and unforeseen items of work that cannot be covered by any item or combinations of items for which there is a unit bid price, or additional work in excess of twenty (20%) per cent of the total amount of work listed under any of the classifications specified in Article A-23, shall be classed as extra work.

"The Contractor shall do such extra work and furnish such materials as may be required for the proper completion or construction of the whole work contemplated upon written order from the Engineer and in the absence of such written order, he shall not be entitled to payment for such extra work. This extra work shall be paid for at a unit price or lump sum agreed upon previously in writing by the Contractor and the Engineer or their authorized representatives, or where such a price or lump sum cannot be agreed upon by both parties or where this method of payment is impracticable, the Engineer may order the Contractor to do such work on a 'force account' basis, or the Commission may enter into a contract with any other party or parties for its execution, or may itself perform any and all such extra work."

In article A-25 the method of payment for force account work is specified, wherein it is required:

"(d) The compensation as herein provided shall be received by the Contractor as payment in full for extra work done on a 'force account' basis, and shall include superintendence, use of tools, and equipment for which no rental is allowed, and profit. The Contractor and the Engineer shall compare records of extra work done on a 'force account' basis at the end of each day. Copies of these records shall be made in duplicate, upon the Commission's 'force account' forms provided for this purpose, by the Engineer and signed by both the Engineer and the Contractor. All claim for extra work done on a 'force account basis' shall be submitted to the Engineer by the Contractor, upon certified triplicate statements to which shall be attached original receipted bills covering the cost of and transportation charges on all materials used in such work, and said statements shall be filed not later than the tenth (10th) day of the month following that in which the work was actually performed and shall include all labor charges, etc., and material charges in so far as they can be verified. Should the Contractor refuse or fail to prosecute the work as directed or to submit his claim as required, then the Commission may withhold pay-

ment of all current estimates until the Contractor's refusal or failure is eliminated, or after giving the Contractor due notice the Commission may make payment for said work on the basis of a reasonable estimate of the value of the work performed."

"A-26. Unauthorized Work. Work done without lines and grades being given, work done beyond the lines and grades shown on the plans or as given, except as herein provided, or any extra work done without written authority will be considered as unauthorized and will not be measured or paid for by the Commission. Work so done may be ordered removed and replaced at the Contractor's expense."

It will be noted the definition of "extra work" includes two classes: (1) New and unforeseen items not covered by the unit price bid, and (2) additional work of the same class or character covered by the unit bids but where the amount is in excess of 20 per cent of the total amount of work listed in the classification. There are items claimed arising in each of these classes.

It is conceded there were no work orders in writing and no agreement in advance as to prices and there were no comparisons between the engineer and the contractor at the end of each day or statements of such extra work not later than the 10th day of each following month. Plaintiff alleges, however, that the work was done at the instance of defendant's engineers and inspectors without work orders in writing and that the defendant thereby waived strict compliance with the contract provision requiring such written orders. In addition, it is said that such work orders as were given and recognized by the state were actually signed after the work was done rather than before, and this, it is contended, established a custom and in effect a waiver of the written work order in advance as required.

The general rule is that a provision in a contract that all extra work, in order to be paid for, shall be ordered by the architect or engineer in writing, may be waived by the owner. *Zarthar* v. *Saliba*, 282 Mass. 558, 185 N. E. 367; 66 A. L. R. 665. Whether there has been a waiver is a question of fact to be determined as other facts, dependent on the circumstances of the particular case.

9 C. J. 846; *Massachusetts Bonding & Ins. Co.* v. *Lentz,* 40 Ariz. 46, 9 P. (2d) 408; *Lord Const. Co.* v. *United States* (C. C. A. 3) 28 F. (2d) 340.

An additional question injects itself into the case on account of the state being a party to the contract, and that is whether it is within the competency of the engineer or his assistants to waive for the state any provisions in the written contract. Assuming, without deciding, that the State Road Commission may with the consent of the other party change or modify the written contract or waive any of its provisions inserted for the benefit of the state, may such be done by words or conduct of the state road engineer or any other agent or employe of the State Road Commission? There is no evidence that any of the claimed extra work was authorized by formal action of the State Road Commission or that it was approved as extra work by the Commission after being done. The evidence merely tends to show that it was approved by the engineer or one of his assistants and the work was done by the contractor without any formal protest or request that an order in writing be given it. In each instance the work was measured and paid for by the state on the theory that it was within the terms of the contract and not extra work, and the amount of work done was paid for on the basis of unit bid prices.

There are three questions involved: (1) Whether the work was extra work, as defined by the contract; (2) whether the engineer actually waived or intended to waive for the state the requirement that the order should be in writing; and (3) whether it is competent for the engineer to waive, even if the facts show that he intended so to waive the contract requirement with regard to written work orders.

We think the engineer had no authority to waive on behalf of the state the requirements in the written contract. He undoubtedly had no authority to enter into a new or different contract, and it would follow that he had no au-

thority to waive the provisions in this one. The contract specified what his duties and powers were and this was well known to the contractor. It is generally held that an architect or engineer in charge of construction work does not have authority to waive a provision requiring written extra work orders. *Wiley* v. *Hart*, 74 Wash. 142, 132 P. 1015; *Massachusetts Bonding & Ins. Co.* v. *Lentz*, supra; Note, 66 A. L. R. 686 and 689. The rule is not more liberal with respect to the powers of an engineer acting for the state in the absence of express powers conferred either by the contract or by the statute. The statute empowers the State Road Commission to bind the state by written contracts and it is only on such written contracts that it may be sued. The state cannot be held for the acts of its engineer beyond the powers conferred by law or the written contract. *Clark County Const. Co.* v. *State Highway Comm.*, 248 Ky. 158, 58 S. W. (2d) 388; *California Highway Comm.* v. *Riley*, 192 Cal. 97, 218 P. 579; 29 C. J. 610. Any person doing business with the state by way of contract or otherwise must take notice of the limitations on the authority of the officers or agents of the state, since they may act only within the scope of their lawful powers. *Clark County Const. Co.* v. *State Highway Comm.*, supra; *California Highway Comm.* v. *Riley*, supra. The state road engineer cannot waive a provision in the contract that extra work, before it can be paid for, must have been authorized and the prices fixed by a work order in writing. *Kansas City Bridge Co.* v. *State*, 61 S. D. 580, 250 N. W. 343; *Ambaum* v. *State*, 80 Wash. 122, 141 P. 314; *Crane Const. Co.* v. *Commonwealth*, 290 Mass. 249, 195 N. E. 110. There are cases cited by plaintiff which we think are not in point. One illustration will suffice. In the case of *Wood* v. *Ft. Wayne*, 119 U. S. 312, 318, 7 S. Ct. 219, 30 L. Ed. 416, the Board of Trustees, being the board authorized by law to enter into a contract, itself ordered the extra work done. This was held to be a waiver, since no written order was given. The case does not support the proposition here urged that a mere employee

or officer other than the State Road Commission may waive a written provision of the contract. It is more consistent to say the contractor waived any rights he may otherwise have to extra pay by proceeding with the work without demand for a written work order or without complying with the requirements of the contract as to extra work on force account and without appealing the matter to the state road chief engineer who, by the contract, is made the arbiter as to any disagreements between the parties. That is particularly true where, as here, the state insists and has insisted that the work was not extra work and there was no intent on the part of its engineer to waive any provision of the contract.

With respect to the fact as to whether a waiver was intended, the evidence must be of a clear and satisfactory character and clearly show a distinct agreement that the work be deemed extra work and a definite agreement with the owner to pay extra for such extra work. *Lord Const. Co.* v. *United States* (C. C. A.) 28 F. (2d) 340; *Bjerkeseth* v. *Lysnes*, 173 Wash. 229, 22 P. (2d) 660. This is a fact question to be determined by the court or the jury as the case may be. *Hunt* v. *Tulsa Terrazzo & Mosaic Co.*, 157 Okl. 174, 11 P. (2d) 521; 9 C. J. 846.

In this case, the court sitting without a jury made findings to the effect that the work done was not extra work; that it was actually measured and paid for on the basis of unit price bid; and that, if it be extra work, yet no work orders were given and no daily reports made as required for work on force account, and that the work was done without protest by the contractor or appeal to the engineer. There is evidence in the record tending to support the finding that the work was not in fact extra work. As to this, there is some conflict, but the finding is supported by substantial evidence and it must be affirmed. There was no dispute in the evidence with respect to failure to obtain work orders, make daily reports, or make statements of extra work on or

before the tenth day of the month following. It was conceded this was not done.

The first cause of action is based chiefly on damages for alleged delays caused by misconduct on the part of the local engineers and inspectors of the Road Commission. The allegations of the second cause of action are for alleged extra work, but for which no work orders were given. The third cause of action is bottomed on alleged changes in plans, imposing additional expense on the contractor, but for which no work orders were given or demanded.

Error is assigned to the findings that the contract was executed September 19, 1932, and that the entering upon the performance of the contract prior thereto, on or about September 11th, was for the sole convenience of the plaintiff. The matter is important because a part of plaintiff's claim is based on delays which are necessarily minimized in time and amount if time be counted from September 19th instead of September 11th. These findings must be sustained. The written contract was executed September 19, 1932. At the contractor's request, verbal promise was given that it might proceed with the work. After it was notified that its bid had been accepted, the contractor went on the ground and commenced work on or before September 11th. The written contract provides, and this provision was in the proposal and well known to the contractor, "no proposal shall be considered binding upon the State until the execution of the contract." The statute permits suit only on written contracts. It is the written instrument executed by the State Road Commission and the contractor which binds the state and contains the proof of the obligations and rights of the parties. *Monroe* v. *United States*, 184 U. S. 524, 22 S. Ct. 444, 46 L. Ed. 670. Acceptance of the bid does not constitute a valid contract with the state. *Parrish* v. *Miller*, 336 Ill. 630, 168 N. E. 671. There is evidence in the record supporting the finding that the contractor was permitted to proceed only at its own risk before actual execution of the contract.

Under the heading, "Delays and Interferences," appellant complains that defendant, "in contravention of its contract, set about deliberately to render it difficult and more costly for plaintiff to perform its contract by spreading the false report among plaintiff's employes that plaintiff was irresponsible financially and would not pay its employes," and other similar conduct. Plaintiff produced evidence that certain of the defendant's inspectors and local engineers said, in substance, that the company could not pay its employes; that the company would never finish the job; that the bonding company would have to finish it; that one of the inspectors said he would break the Campbell Building Company if he could, and other statements of similar import. This, with evidence that the inspectors held the company to an exacting compliance with the provisions of the contract and delayed setting stakes when requested and similar conduct, is relied on as supporting the quoted allegation.

The state cannot be held for any such actions by its employees, even if true, for the reason that it can be held only on the contract and for the acts of its agents and officials pursuant to the contract and not for any unauthorized or malicious conduct which may have resulted in damage. There is not anything in the evidence tending to prove that any such acts or conduct on the part of the state's employees were directly or indirectly authorized by the State Road Commission or approved by the commission after knowledge. Indeed, it is shown in at least one instance, when attention of the chief engineer was called to certain offensive conduct on the part of one of the employees, the offending employee was ordered removed from the job, and in another instance where the contractor appealed to the engineer with respect to the insistence by an inspector that the contract provision be strictly followed, that strict performance was waived in favor of the contention of the contractor. The contractor must have known the limitations on the authority of the inspectors and resident engineers and it should have

carried the matter to the chief engineer as to any of the actions about which it now complains.

Claim is made for extra work between stations 120 and 240 on account of excess of scraper overhaul. It is claimed the engineer changed the work as planned from building embankments from a side barrow to a cut and fill, imposing additional work. This is claimed to be extra work. It is the same type of work covered by the contract, ██ but plaintiff claims it exceeds 20 per cent more than the estimated quantities under the provisions of article A-24 of the contract. If so, it should be supported by a written work order of the engineer to entitle the contractor to payment. There seems to be no question that the work was done and that it was orally ordered by the resident engineer, but no written order was demanded or furnished and no agreement made for extra pay over that provided in the contract for overhaul. The unit price for overhaul as bid in the proposal was allowed by the engineer. Plaintiff insists that the overhaul, being more than the estimated quantity, plus 20 per cent should be paid at a higher price than the unit price bid. This is undoubtedly one of the items covered by the contract, and referred to in article A-21, which, for additional pay as extra work, should have been supported by a written work order unless it was waived. It is not new or different work not contemplated by the contract, as was allowed in *Salt Lake City* v. *Smith* (C. C. A.) 104 F. 457, and *Wilson* v. *Salt Lake City*, 52 Utah 506, 174 P. 847.

We have discovered no evidence which would warrant a finding of waiver by the state under the rule heretofore announced. The contractor's evidence tends to show that the cost of the overhaul was more than the amount bid in the proposal and paid for by the state. The trial court made a finding that the work was performed and paid for at contract rates; that plaintiff did not protest or file a written work order. The finding will not be disturbed.

The contractor alleges it was delayed in placing culverts so that it could not place them as the grading proceeded,

the cause alleged being that the state delayed in placing its order for concrete culverts which it was to furnish. The grading work was started by the contractor about September 11th, but the contract was not executed until September 19th. We have already decided that the findings by the court with respect to these dates are supported by the evidence and that the state cannot be held to the contract until its execution. The culverts were received October 1st and 6th. They had been ordered by the state some time after the bid of plaintiff had been accepted and before execution of the contract. These culverts were not on hand when the grading started and the contractor was put to some additional expense in placing them, but that is one of the risks the contractor took in starting work before the contract was signed, the state having expressly stipulated it would not be bound until the contract was executed. The contract did not fix any particular date when the pipe would be at hand. The facts with respect to the ordering of the pipe and the delay were fully known to the contractor at the time it executed the contract. The facts are quite different from those in the case of *Calumet Refining Co.* v. *Star Lubricating Co.*, 64 Utah 358, 230 P. 1028, and other cited cases. The finding of the trial court must be sustained.

There is a conflict in the evidence as to who was at fault for the delays occasioned by the condemnation of certain aggregates for concrete attempted to be used by plaintiff in its concrete mix. Undoubtedly, the inspectors for the state were right in the first instance, as the aggregates did not meet the requirements of the specifications. But the state engineer wrote to the latter authorizing a relaxation of the requirements respecting large aggregates. There is conflict in the evidence as to whether this order was obeyed and, if so, when, the contractor insisting that the resident engineer continued to insist on strict requirements. The court found the delay was caused solely by the

contractor's failure to adequately and properly screen the aggregates. This finding must be sustained.

The first cause of action in plaintiff's complaint contains a general allegation of delays caused, as it says, by defendant, and prays for $10,000 damages. The damage is based on the difference in cost, as estimated by plaintiff's witnesses, between a finished job in the fall or winter of 1932 and such finished job in the spring of 1933, additional expense having been incurred because of the intervening winter months. Most of the allegations of fact are based on conduct which plaintiff alleges is malicious and with intent to put it out of business. This, we have shown, was not traced to the Commission either by way of authorization or approval. The trial court held that the state's inspectors and representatives did nothing that hindered, delayed, or interfered with the progress of the work. The evidence was in conflict and we are bound to sustain the finding. Plaintiff excepted to the findings on the ground that they were merely conclusions of law and not findings of fact. Some of the findings are negative in character, state ultimate facts, and we think, sufficient, although by no means models for findings.

A number of items are included in paragraph 3 of the second cause of action, all under the claimed classification of extra work on force account or for which no work orders were given and no force account sheets filed at the end of each day as required by the contract, and none were filed with the engineer before the 10th day of the month following. Most of the items included in paragraph 3 and claimed to be extra work referred to work done, measured, and paid for at the base rates fixed by the contract. What we have heretofore said with regard to extra work is applicable here. These items ranged from $13.34 to $754.29. One of the items is for the removal of rocks from the right of way. This item is expressly covered by the contract, which says the price of such removal is included in the price for excavation. Many of the items are such as could well be the basis for a work

order as extra work had the contract provisions been complied with, but this not having been done, the state cannot be held liable where the claim for the extra work was not made until the completion of the work.

The contract makes the engineer of the State Road Commission the arbiter of differences which might arise "as to the quality and acceptability of materials furnished, work performed and as to the manner of performance and rate or progress of such work, and [he] shall decide all questions which may arise as to the interpretation of the plans and specifications and all questions as to the acceptable fulfillment of the contract on the part of the contractor"; also "to determine the amount and quality of the several kinds of work performed and materials furnished which are to be paid for under the contract." The engineer is defined to be the "Chief Engineer of the State Road Commission, acting directly or through an assistant or other representative duly authorized by the Commission or the Engineer, such assistant or representative acting within the scope of the particular duties assigned to him and of the authority given him." It is further provided, "In any case where Contractor claims additional compensation for any item of work covered by this contract or any contingency in connection therewith and an understanding is not reached between the Contractor and the Resident Engineer or District Engineer, the point at issue shall within five (5) days' time be referred to the Chief Engineer. Should the matter under dispute refer to work in contemplation the Engineer may give instructions to start said work pending decision. All facts must be submitted in writing by the Contractor or Engineer."

Complaint is made of some of the decisions of the engineers and inspectors on the job representing the chief engineer, and it is argued that it is an unwise policy to vest the engineer, who is an employe of the State Road Commis-

sion, the other contracting party, with such broad powers; that such engineer might be prejudiced or arrogant and make decisions unreasonably against the contractor and in favor of the state. The question of policy is not for us to determine. A sufficient answer is that the contract so provides and the contractor accepted such condition when it executed the contract. It was fully advised in the premises and agreed to the provisions which gave the engineer supervisory powers. No complaint is made directly against the chief engineer or the State Road Commission itself, but only that inspectors and local engineers acted unreasonably or to plaintiff's prejudice and damage.

Under the provisions of the contract, it was always possible for the contractor to appeal any matter of difference from the engineer on the job to the chief engineer. Notwithstanding the claims now made of such improper conduct on the part of local engineers and inspectors, there were very few appeals made to the higher authority and in at least two instances which we have discovered in the evidence the decision was in favor of the contractor. It is too late to urge such considerations after the contract had been entered into and the work finished or to base thereon claims for damages and for extra work. The clear provisions of the contract were made for the protection of the contractor against arbitrary action on the part of subordinate engineers or representatives of the State Road Commission. The contractor did not move to protect its interests, if it believed it had any being violated, by either insisting on work orders in writing from the local engineer or in making the daily comparisons or filing the report of such extra work on the 10th of each month or in timely carrying its controversies to the chief engineer. When the parties to a contract agree that the architect or engineer or other person shall exercise power of decision, the courts will uphold such as valid and the decisions must stand unless shown to have been made arbitrarily or in bad faith. *Mur-*

phy v. *Salt Lake City*, 65 Utah 295, 236 P. 680; *Montgomery* v. *Mayor of City of New York*, 151 N. Y. 249, 45 N. E. 550.

In a case involving the construction of a state highway where the highway commissioner was agreed on as the arbiter to settle disputes, it was alleged that his relationship to the state made him a partisan arbiter, but the court held that partiality, interest or relationship on the part of an arbiter is in itself no ground for setting aside an award when the agreement to submit matters for decision to such arbiter was made with full knowledge of such relationship. *State ex rel. Noble* v. *Bowlby*, 74 Wash. 54, 132 P. 723.

An interesting argument is made in support of the allegations of paragraph 4 of the second cause of action to recover for additional yardage alleged to have been scraped off the top and sides of the embankment. The argument is based on differences between yardage measured in excavation and in embankment when compared with estimates of yardage and embankment in the plans. The whole argument strikes us as highly speculative as the estimates in the plans are, of course, only advance estimates and are not binding, while the measurements were from actual survey of the work, both of excavation and embankment, and the quantities computed and compared, the one to check against the other. The evidence of the engineer who did the computation was to the effect that there was no fixed rule as to shrinkage or swell factor and that they are of no particular help in making the comparison. The argument seems to be that because there was a wide difference on account of shrinkage between excavation and embankment indicated in the plans and this difference amounted to practically nothing in actual measurements, that there must have been some mistake in the measurements. It would be a better argument to say there must have been some mistake in the estimated quantities. The state's witness also testified that the yardage moved was paid for as excavation and that such as had been placed on the embankment and again moved at the instance of the state was

actually measured and paid for. The court found that this was not extra work and that whatever work was done was measured and paid for; that there were no work orders given covering the items involved. The findings are supported by the evidence and will not be disturbed.

We next come to four items of alleged error against the state said to be confessed and on which alone appellant insists it is entitled to a reversal of the judgment and to a new trial. It was openly admitted in court in the course of the examination of one of the state engineers that an item of 222 yards of excavation had been overlooked. Notwithstanding this, the court found that all work done had been measured and paid for. The item amounted to $43.29. This amount was not included in any of the monthly estimates and was not paid for. Under the terms of the contract, it should be included in the final estimate and paid when that is paid. The contract provides, "All prior estimates upon which payments have been made are subject to correction in the final estimate." Payment of the final estimate was withheld by the state because of failure of the contractor to furnish satisfactory evidence to the commission of payment of all labor and material claims. We shall discuss this matter later. There is no need of ordering a new trial on account of this item since the error is admitted by the defendant and settlement for it must be made in the final estimate.

The next item is also a small one. Plaintiff claimed $500 damage on account of certain extra rock excavation made necessary by a change of stakes, making the slope one to one instead of one-half to one as the stakes were originally set. The evidence does not fully support the allegation but does show that a change of stakes, as alleged, was ordered by the engineer after work had commenced under the original staking. Plaintiff's testimony was that not to exceed six hours' work had been done in value not to exceed $100. The testimony of the same witness was to the effect that the change was beneficial to

plaintiff and saved it money because it rendered unnecessary the blasting and removal of between four and five hundred yards of rock which would have cost much more to remove than the contractor could expect to be paid. The contract provided a unit price for all excavation and no higher price would be paid than if the earth had been loose earth. We see no reason for disturbing the finding in respect to this item.

The next item is the failure of the state to remove some 21 telephone poles in the barrow pit in the right of way and plaintiff was required to work around the poles at greater expense than if the poles had not been there. This expense was estimated at from $42 to $500. Plaintiff claims only $42 on account of this item based on the testimony of one of defendant's witnesses to the effect that the damage would be $2 a pole. The resident engineer of defendant testified that the amount of time to plow around the pole was the same as to plow straight ahead and that in computing the yardage the contractor was allowed credit for excavating the earth that was left in the pit around the poles. In his opinion this was adequate compensation. The trial court held that this was not extra work; that if it did constitute extra work, then there were no work orders and plaintiff did not comply with the contract provision entitling it to be paid therefor as extra work. We see no reason to disturb this finding.

The last item is for $17.36 for salvaging a culvert. Plaintiff's evidence is that this was not paid for, while defendant's engineer testified it was. It seems there was produced in evidence a work order covering this item and by comparison with the work orders allowed, this one was not found to have been allowed and paid. The paper itself shows that it had indorsed on it the word "Pay." This evidently was an oversight and will undoubtedly be included in the final estimate. The item is not of sufficient importance to require a new trial.

The last matter requiring discussion is the demand for $7,297.80, being 10 per cent of the total amount computed and allowed by the state and which was retained under the contract provision A-62 which provides:

"Whenever the Contractor shall have completed the work in accordance with the terms of the contract, the Engineer will certify his acceptance to the Commission together with estimate of all work performed and the value thereof. The Contractor must allow such time, between the completion of the work and submission to the Commission of the final estimate of work performed, as the Engineer may require to compute, assemble and check the necessary data. The Commission upon satisfactory evidence that the Contractor has fully paid all just debts for labor, materials and equipment incurred in connection with said work and that the Contractor has fully restored all public and private property damaged during construction of said work, will accept the work and release the Contractor and will pass final estimate of the work performed to the State Auditor for final payment. All prior estimates upon which payments have been made are subject to correction in the final estimate."

Plaintiff admits it has not paid all just debts for labor and material incurred, but its manager testified that he had arranged for future payment of what he conceded to be just claims and that other claims against the corporation are now in litigation. He also testified that neither he nor anyone representing his company had supplied any satisfactory or other evidence that all just debts for labor and material incurred by the contractor had been paid or that it had restored all public and private property damaged during construction. The defendant insists that it cannot be required by suit to make payment of the retained 10 per cent until plaintiff complies with the condition of the contract and furnishes evidence that it has paid or satisfied all just claims for labor and material. The contractor contends this requirement was waived because at the conclusion of the work the commission submitted a blank affidavit for execution by the contractor certifying that it had either fully paid or satisfactory arrangements had been made with all persons who had performed labor or furnished materials

in connection with the contract, and also including the requirement that it swear "that there have been no damages incurred in connection with the work and the completion of said contract which have not been fully paid, and there are no claims existing against the said contractors on account of any damages growing out of carelessness or failure to complete the work or for any cause or reason"; and also "that there are no mechanics' or other liens against said contractors or the work performed on account of said contract, and the State Road Commission will be safe, secure and free from any annoyance,. claim or complaint coming from any person performing the work or labor or furnishing any material in connection with said contract if the full and complete sum due on said contract is now paid to the contractors."

It will be noted there is no mention in words in the proposed affidavit that the contractor has fully restored all public and private property damaged during construction. The certificate is in some respects broader than the requirements of the provisions of A-61 and this it is contended is a waiver by the state of any requirement on the part of the contractor to supply evidence of payment of labor and material claims. The contractor would be in a better position to insist on payment of the final estimate had it submitted an affidavit or certificate showing payment or settlement of labor and material claims, that being the one condition to which it had agreed and which the State Road Commission insisted should be fulfilled before payment. The fact that other information was required might well be ignored as beyond the right of the commission to demand.

Plaintiff at no time was in a position to supply the information with respect to payment of labor and material claims.

Appellant argues that the requirement of A-62 with respect to the payment of these claims is "inept" because the state has no right to retain any part of the contract price for the protection of labor and material claims. However

that might be, the contractor agreed to the provision which permits the state to retain the final 10 per cent until such evidence is submitted to it. If such requirement were inane or unnecessary or otherwise objectionable, the contractor should have insisted on some change prior to the execution of the contract. There is authority supporting the view that even though the amount of the final estimate is owing under such a contract, it is not yet due because of failure of the contractor to supply satisfactory evidence that labor and material claimants had been paid. 9 C. J. 831, § 169; *Mondioli & Stewart* v. *American Bldg. Co.,* 83 Wash. 584, 145 P. 577; *Utah Const. Co.* v. *St. Louis Const. & Equip. Co.* (D. C. N. M.) 254 F. 321; *Fritz Jahncke, Inc.,* v. *Fidelity & Deposit Co. of Md.,* 166 La. 593, 117 So. 729.

Finding no error in the record, the judgment is affirmed with costs to respondent.

EPHRAIM HANSON, MOFFAT, WOLFE, and LARSON, JJ., concur.