FEDERAL SECURITY INSURANCE
COMPANY, Appellant,

v.

Joseph L. SMITH, Appellee.

No. 5826.

United States Court of Appeals
Tenth Circuit.

Sept. 2, 1958.

N. J. Cotro-Manes and Paul N. Cotro-Manes, Salt Lake City, Utah, for appellant.

Edward W. Clyde, Salt Lake City, Utah (William G. Gibbs, Salt Lake City, Utah, was with him on the brief), for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

Joseph L. Smith brought this action for an accounting of insurance commissions alleged to be due him from the defendant, Federal Security Insurance Company, under the provisions of an oral General Agency insurance contract. The Insurance Company admitted in its pleadings that it entered into a verbal contract whereby plaintiff was to sell its policies in the State of Idaho, but denied that the commission schedule as claimed by the plaintiff was agreed to or that plaintiff was to act as a General Agent. A counterclaim alleged that plaintiff was indebted to the defendant in the sum of $3,447 by reason of his failure to remit net premiums. Judgment was entered for the plaintiff in the sum of $38,346.60, and in favor of the defendant on its counterclaim for the amount sued for, together with interest. This appeal is from the judgment in favor of the plaintiff.

The trial court found that on or about January 1, 1953 the parties entered into a verbal contract by the terms of which plaintiff agreed to sell insurance for the defendant in the State of Idaho and to serve as Exclusive General Agent for the defendant's insurance business in that State; that on all policies sold by the plaintiff he was to receive a commission of 90% of the first year's premiums, 17½% of the second year's renewal premiums, and 7½% of the renewal premiums from three to ten years; that on policies sold within the State of Idaho for the defendant by other persons, the plaintiff was to receive 10% of the first year's premiums and 2½% on renewal premiums from two to ten years. The court also found that the agreement was effective as of January 1, 1953, and was terminated on the 8th day of February, 1954. The question presented is whether there is substantial evidence to sustain these findings.

Rule 52(a), Fed.Rules of Civ. Proc. 28 U.S.C.A., provides that in an action tried without a jury, the findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. It is well established that appellate courts are required to accept findings of fact if supported by substantial evidence and not clearly erroneous. Fuller v. C. M. & W. Drilling Co., 10 Cir., 243 F.2d 862; Wunderlich Contracting Co. v. United States ex rel. Reischel & Cottrell, 10 Cir., 240 F.2d 201, certiorari denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859; Sowder v. Waray Oil Corp., 10 Cir., 231 F.2d 9. Substantial evidence means more than a mere scintilla, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Superior Ins. Co. v. Miller, 10 Cir., 208 F.2d 700. If, from established facts, reasonable men might draw different inferences, appellate courts may not substitute their judgment for that of the trial court. Wunderlich Contracting Co. v. United States ex rel. Reischel & Cottrell, supra.

■ While it is agreed that there was a verbal arrangement whereby plaintiff was to represent the defendant in Idaho, there was a sharp conflict between the parties as to some of the terms. The plaintiff testified that early in January, 1953, he met A. A. Timpson, Vice-president and General Manager of the defendant company, in Salt Lake City, Utah, for the purpose of negotiating with defendant company a General Agency contract for the State of Idaho. After stating to Timpson that he would not accept any contract except that of a General Agent, he was advised to return later for a decision. The gist of plaintiff's testimony is that upon his return a few days later, Timpson agreed to a General Agency contract with commissions as stated in the Court's findings.[1]

The plaintiff stated that the contract was to commence immediately and was to be reduced to writing and forwarded to him in Idaho. The record does not disclose the exact date of the meetings, but the first meeting was after January 1, 1953. The complaint alleged that the verbal contract was entered into on or about February 1, 1953. Plaintiff also testified that he did not obtain a license to solicit insurance business in Idaho until early in February. In March, the plaintiff, with the consent of Timpson, opened a bank account in Idaho for the company. Timpson testified that the plaintiff was the only agent working for the company throughout its various territories who was authorized to withdraw funds from the company's bank account. After obtaining an Idaho license, plaintiff and agents selected by him sold and continued to sell defendant's insurance in Idaho. Timpson testified that it was quite likely that the company advised the Idaho Insurance Commissioner that plaintiff was the designated person to hire and discharge its agents in Idaho. In July of 1953 Timpson forwarded a form of contract to plaintiff, which was substantially different from that which Smith testified had been agreed upon.[2] Plaintiff did not sign it and there was no change in his method of handling the company's business prior to the termination of his services in February of 1954. The trial court accepted plaintiff's version of the contract, which satisfies the substantial evidence rule.

■■ The fact that the parties intended that their agreement should later be reduced to writing does not affect the validity of the oral arrangement. It is quite evident that the parties did not intend that the effectiveness of the contract was to be delayed until reduced to writing as actual performance began and continued for several months before a written form was submitted, which admittedly was not the same as the original understanding. The rule is that the mere intention to reduce an oral or informal agreement to writing is not of itself sufficient to show that the parties intended that until such formal writing was executed the contract should be ineffective. In the absence of a contrary intention, where the terms of a contract have been agreed upon, the failure to later execute a contemplated written instrument does not prevent the contract from becoming an obligation of the parties. 12 Am.Jur., Contracts, Section 25; Smith v. Onyx Oil & Chemical Co., 3 Cir., 218 F.2d 104, 50 A.L.R.2d 216; Calumet Refining Co. v. Star Lubricating Co., 64 Utah 358, 230 P. 1028; Annota-

---

1. Timpson testified that under the oral agreement, plaintiff was to receive 90% of the first year's premiums on the insurance written by plaintiff or those appointed at his request, but he did not recall the commissions agreed to be paid from renewal premiums received in subsequent years. He denied that plaintiff was to receive a commission on insurance written by anyone except himself and agents appointed by him.

2. This proposed contract was described as an "Agency Manager's Contract". The secretary of defendant company testified that he understood plaintiff to be a General Agent and he considered the Agency Manager's contract as synonymous to that of a General Agent. Plaintiff testified that the secretary told the company president that "Mr. Smith was working under a general agent's contract, but they changed the contract on him".

tion, 165 A.L.R. 756; Annotation, 122 A.L.R. 1217.

■ There is no merit to the contention that defendant's letter of March 30, 1956 amounted to an account stated. This was a "To whom it may concern" letter of recommendation, written by Timpson to assist the plaintiff in securing other employment. After some commendatory statements as to plaintiff's ability as an insurance agent, the letter related that at the termination of plaintiff's services with the defendant company, he had a debit balance of $3,447, and that "arrangements have been made between the company and Mr. Smith for a complete and satisfactory settlement of this account". Clearly the settlement referred only to the amount which plaintiff owed the defendant. Timpson testified that it was agreed that plaintiff owed the company that amount of money. Plaintiff acknowledged that he was indebted to the company in the amount stated, but denied that the letter was for the purpose of settlement of accounts between the parties.[3] To constitute an account stated, it is necessary that the statement be examined and agreed to by the parties, either expressly or by implication. 1 Am. Jur., Accounts and Accounting, Section 16; Federal Deposit Ins. Corp. v. Kimsey, 10 Cir., 203 F.2d 446; Scoville v. Kellogg Sales Co., 1 Utah 2d 19, 261 P. 2d 933; Hurd v. Central Utah Water Co., 99 Utah 355, 106 P.2d 775; Welsh, Driscoll & Buck v. Buck, 64 Utah 579, 232 P. 911; Oberndorfer v. Moyer, 30 Utah 325, 84 P. 1102.

■ As to the date upon which the contract was to become effective, we do not believe that the evidence supports the finding that it was to be effective as of January 1, 1953. It is without conflict that negotiations between Smith and Timpson began after the first of the year and continued for several days. The record does not disclose the date upon which Smith arrived in Idaho. An Idaho license was obtained by plaintiff about February first. The complaint alleges that the contract was effective as of February 1, 1953. Plaintiff's testimony was that he could not represent the defendant in the insurance business until he obtained an Idaho license. Considering the record in its entirety, we think that it was the intent of the parties that the contract should become effective only upon plaintiff's qualification in Idaho, and that the accounting should be from that date.

The case is Remanded for determination of the date upon which plaintiff qualified as an agent for defendant in Idaho, for an accounting from that date, and a modification of the judgment accordingly.

---

3. The trial court made no finding on the question and the defendant made no request for such a finding.